THE STATE OF OHIO, APPELLEE, *v.*
LONGO, APPELLANT.

(No. 43672—Decided May 27, 1982.)

Mr. *John T. Corrigan,* prosecuting attorney, for appellee.

Mr. *Harvey H. Starkoff,* for appellant.

DAY, J. This case is an appeal by defendant-appellant, Carl J. Longo (defendant), from his conviction and sentence on a charge of carrying a concealed weapon (CCW) in violation of R.C. 2923.12. Defendant, a first offender, pleaded no contest, was found guilty and was sentenced to one to ten years.

For the reasons adduced below, the judgment is reversed.

I

Defendant was arrested shortly after midnight on May 2, 1980, on Mayfield Road near SOM Center Road in Mayfield Heights. He (and another person who escaped and was not identified) were suspected of tampering with a truck parked in an apartment complex parking lot. When arrested defendant was found to be carrying a loaded .32 caliber revolver.

He was charged in Lyndhurst Municipal Court with a violation of Mayfield Heights Codified Ordinance (M.H.C.O.) 545.05.[1] He pled no contest to the charge on June 12, 1980. He was fined $100. It was the understanding of his defense counsel and the assistant Cuyahoga County prosecutor that defendant was to be bound over to the county grand jury only on the CCW charge.

---

[1] "545.05 PETTY THEFT.

"(a) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat.

"(b) Whoever violates this section is guilty of petty theft, a misdemeanor of the first degree, if the value of the property or services stolen is less than one hundred fifty dollars ($150.00), if the property is not listed in Section 545.03 and if the offender has not previously been convicted of a theft offense. (ORC 2913.02)."

Nevertheless, the grand jury indicted defendant on three counts: CCW; aggravated robbery, R.C. 2911.01; and possession of criminal tools, R.C. 2923.24. The aggravated robbery charge was nolled and the criminal tools charge apparently dismissed. Defendant intended to plead no contest to the CCW charge. The prosecutor told the trial court that the two additional indictments resulted because the grand jury was not aware of the Lyndhurst plea and emphasized that "[t]he only charge that was bound over to the grand jury was CCW."

Among the reasons assigned for dropping the aggravated robbery charge was double jeopardy. The trial court appeared not to be convinced that this constitutional ground was implicated.

Defendant was allowed to plead no contest to the CCW charge and was found guilty. But the court continued to dwell on auto theft and the fact that defendant, at age thirty-four or thirty-five, was "a little beyond the normal age of auto theft." Based on a telephone call the court made to the vehicle owner, it said "the evidence, is substantial to draw the inference that

this was a part of the attempted theft of the auto * * *"; and, "I see this is a 35-year-old-man who is engaged in a car theft"; and, "I draw the conclusion that this guy is involved in this on a serious basis"; and, "I have never seen a guy this age, under these circumstances, which cannot be explained to me in any other way; that he was out really looking for trouble." The court also observed that "auto theft is an organized business" and that defendant "sells used auto parts."

Although CCW was the only charge before the court, it stated:

"This is more than a gun thing. This is a case where a man had a gun in connection with an auto theft, and I think, you know, I think it was serious.

"* * *

"It is a serious case. I don't think this is a — I don't think this is kid stuff."

On the record, defendant was found guilty only of petty theft in violation of M.H.C.O. 545.05[2] in Lyndhurst Municipal Court, a first-degree misdemeanor, and in common pleas court of carrying a concealed weapon, a third-degree felony.[3]

---

[2] Crim. R. 11(B)(2) provides that a no contest plea "is an admission of the truth of the facts alleged." The facts alleged in Lyndhurst Municipal Court are that:

"[W]ith purpose to deprive the owner of a certain motor vehicle knowingly attempted to obtain control of a [sic] such motor vehicle without the consent of the owner or person authorized to give consent. Said motor vehicle being a 1979 Chevrolet Pickup Truck Ohio License 4JN832, VIN # CCL249F371014."

M.H.C.O. 545.03, however, states that M.H.C.O. 545.05 does "not apply if the property involved is any of the following:

"(d) A motor vehicle * * *"

Nevertheless, the prosecution, defense and the court discussed defendant's plea to "attempted auto theft" or "auto tampering."

[3] The facts in the CCW case were said to be:

"We think the evidence would show if we went to trial that the defendant, Mr. Longo, was in a parking lot in the City of Mayfield

Heights,. that a resident observed someone step out of his automobile and go to the resident's truck.

"The police were called. The person who observed this, the resident, chased the individual by his truck, and was unsuccessful in apprehending that person.

"The police responded. He gave a description of a maroon or dark red automobile, leaving the parking lot, proceeding in a particular manner.

"The police proceeded out and shortly thereafter arrested Mr. Longo on SOM Center, Route 91.

"At that time the automobile in question matched the description as given by the resident, that being Mr. Ronald Schon.

"He was then placed under arrest and he was searched. At the time he was searched, on his person concealed was found a .32 caliber revolver, with three live rounds in it." (Tr. Vol. I, pages 23-24.)

Defendant, according to testimony,[4] had no previous juvenile or criminal record. Nevertheless the trial court sentenced him to one to ten years, a heavy sentence for the offense, but within the statutory limits.[5]

In accepting the plea the court conformed to the requirements of Crim R. 11(C)(2) in advising the defendant.

In imposing sentence the court also said that it had called the people whose truck was alleged to be involved and "talked to a lady who said she was his [owner's] wife." The court then stated the woman told him what she and her husband saw[6] and concluded, "that's the testimony from both of these people * * * the testimony that both of these people would have presented. * * *" Needless to say neither the owner nor his wife was sworn, took the stand nor was subject to cross-examination by defense counsel. Moreover, what the wife said her husband saw was hearsay not within any redeeming exception.

After pronouncing sentence the court did say it would "consider shock probation" and urged counsel to file such a motion. Instead, defendant moved to stay execution of the sentence and to withdraw his no contest plea.

A hearing on defendant's motion was held March 3, 1981. The gist of the evidence presented was that trial counsel, whose "principal practice has been criminal defense work" for fifteen to eighteen years, felt that based on his twenty-nine years of experience as a lawyer and the "thousands" of plea-bargained criminal cases he had handled, defendant "would get probation or that he might have to do a few days." He added, "I have never seen a [first offender] CCW sent to the penitentiary and I told [defendant] that he could not and should not expect any penitentiary [sic], although yet telling him that the Code calls for one to ten."

Defense counsel also stated what defendant's defense to the CCW charge would have been had he been tried. Defendant testified that he would have gone to trial had he known he was not getting probation.[7]

---

[4] Neither the probation report nor any "rap sheet" for the defendant was part of the documentary record.

[5] R.C. 2929.11(B):
"(3) For a felony of the third degree, the minimum term shall be one year, eighteen months, two years, or three years, and the maximum term shall be ten years;"

[6] "I asked her what had happened, and she said that her husband was looking out the window and saw this Corvette pull into the parking lot, and that he has a big interest in Corvettes, and so he continued to watch it and called her attention to it, and the two of them were looking out the window, and she, along with her husband, saw the Corvette drive up next to [her husband's] vehicle, saw a young boy — what he described as a young boy — I don't know how old you are, as to whether they are young or what they are — saw somebody she described, characterized it as a boy, get out of the Corvette and go into his car, his vehicle, just as if the boy had a key to it, and just, you know, got in that quickly.

"So, he ran downstairs and she got on the phone and called the police right away, and once the boy got into the car or into the vehicle, I guess, the * * * vehicle, the Corvette pulled some distance away, and waited in a parking spot.

"The defendant — or [owner] then got downstairs, went to his car, the kid ran, and he started to chase the kid. The Corvette pulled away.

"This was the defendant's Corvette." (Tr. Vol. I, page 39.)

[7] Counsel and the court also referred to a document prepared by the trial judge, GUIDELINES FOR SENTENCING AND PROBATION SUPERVISION, which was not introduced into evidence but is appended to defendant's appellate brief. The document indicates that defendant should have been a likely candidate for probation or, at worst, a local sentence.

The trial court denied defendant's motion to withdraw his plea.[8]

Defendant appealed, assigning three errors:

"1. The trial court erred in refusing to grant Defendant-Appellant's Motion to Vacate his Plea of No Contest where said plea was entered involuntarily and in reliance on defense counsel's erroneous statements that Defendant-Appellant would receive probation and not receive a jail sentence.

"2. Defendant-Appellant was denied effective assistance of counsel where his attorney misrepresented to him that he would not receive a jail sentence if he pled no contest to the charge of carrying concealed weapons.

"3. The trial court erred in refusing to grant probation and in imposing a jail sentence of one (1) to ten (10) years where Defendant-Appellant pled no contest to the charge of carrying concealed weapons and where such a harsh penalty was not mandated by the facts and circumstances of the within matter."

II

Defendant's second assignment of error will be considered first. It argues ineffective assistance of counsel essentially because his attorney gave him what was later perceived to be bad advice combined with an unauthorized promise of probation.

In *McMann* v. *Richardson* (1970), 397 U.S. 759, 771, it was said:

"[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts."

The *McMann* court also said that a court would not retrospectively consider counsel's advice to be right or wrong but:

"[W]hether that advice was within the range of competence demanded of attorneys in criminal cases." *Id.*

A "two-step process" has been adopted by the Ohio Supreme Court for determining ineffective assistance of counsel in *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397 [2 O.O.3d 495]:

"When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a *substantial violation of any of defense counsel's essential duties to his client.* Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, *there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.*

"On the issue of counsel's effectiveness, the appellant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent." (Emphasis added.)

In this case it is not necessary to go beyond the first step. Defense counsel's bona fides were clearly established and the record shows that he violated no duty to his client. Indeed, it was observed that counsel "took special care with this case" because of a long-standing relationship with defendant's family.

Counsel's error was to predict a sentencing result based on an educated judgment — a judgment that did not pan out.

Effective assistance of counsel does not guarantee results and consequences of advice are not the only measure. For in *State* v. *Clayton* (1980), 62 Ohio St. 2d 45, 49 [16 O.O.3d 35], certiorari denied 449 U.S. 879, the court held:

"Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available

---

[8] The court also had the prosecution prepare contempt charges against trial counsel.

does not amount to a breach of an essential duty to his client."

Although counsel's anticipation of probation, in retrospect, was mistaken, this did not render the assistance ineffective.

Defendant's second assignment of error is not well taken.

## III

Defendant's first assignment of error contends that the trial court erred in refusing to allow him to withdraw his no contest plea after sentence was pronounced; his third assignment of error contends that the jail sentence imposed by the court was too harsh under the circumstances. Because both contentions concern matters within the trial court's discretion (see Crim. R. 32.1[9] and R.C. 2929.12 and 2951.02[10]), these issues will be considered together.

## A

Crim. R. 32.1 concerns pleas "of guilty or no contest." The rule allows withdrawal of such plea "to correct manifest injustice" within the court's discretion. The Ohio Supreme Court has held that:

"* * * [A] defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice. * * * The motion is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court. * * *" *State* v. *Smith* (1977), 49 Ohio St. 2d 261, 264 [3 O.O.3d 402].

It is true that the court, at the hearing at which defendant entered his plea, conformed to the mandates of Crim. R. 11(C)(2), *State* v. *Griffey* (1973), 35 Ohio St. 2d 101, 111 [64 O.O.2d 62]. But at the

hearing in which defendant's motion to withdraw his plea was considered it was unrefuted that defendant's plea was based on his lawyer's specific statement, " 'You will not go to jail.' "

A guilty plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial — a waiver of his right to trial before a jury or a judge," *Brady* v. *United States* (1970), 397 U.S 742, 748. A no contest plea is a substantially similar waiver, Crim. R. 11(C)(3), and "[w]aivers of constitutional rights * * * must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady, supra.*

There are indications in the federal jurisdiction that pleas induced by errors of defense counsel are invalid, *United States, ex rel. Thurmond,* v. *Mancusi* (E.D.N.Y. 1967), 275 F. Supp. 508, 517; cf. *United States, ex rel. Elksnis,* v. *Gilligan* (S.D.N.Y. 1966), 256 F. Supp. 244, 249.

The logic is persuasive:

"A * * * plea induced by a mistaken belief that a binding plea agreement had been made is invalid even if it is the defendant's own attorney who is responsible for the defendant's mistaken belief." *Thurmond, supra,* at 517.

"Indeed, it has been held that even where no specific promise was made, and a guilty plea was entered as a result of a 'grave misunderstanding' solely on the part of defense counsel and not participated in by either the prosecution or the judge, the interests of justice required that the defendants be relieved of their pleas and the judgments of conviction vacated." *Elksnis, supra,* at 249.

## B

"Whether a defendant shall be placed on probation lies within the broad discretion of the trial court," *State* v. *Weed* (1954), 110 Ohio App. 186, 189 [12 O.O.2d 457]. R.C. 2929.12 refers to "the court's

---

[9] Withdrawal of guilty plea.

[10] Imposing sentence for felony; criteria for probation.

discretion" in sentencing. Subsections (B) and (C) of that statute state several factors that "shall be considered in favor" of imposing longer (B) or shorter (C) minimum sentences.[11] And, "[g]enerally, an appellate court will not review the trial court's exercise of discretion in the matter of sentence so long as the sentence is within the statutory limits." *State* v. *Jeffers* (1978), 57 Ohio App. 2d 107, 107-108 [11 O.O.3d 101].

But the *Jeffers* court did not stop here. It went on to hold that to increase a sentence because the trial court believed the defendant lied on the stand "is in effect to punish him for an offense for which he has been neither charged nor tried and to discourage a defendant from exercising his right to trial and to testify on his own behalf," *Jeffers, supra,* at 109.[12] The instant case is no different in principle.

Here, the trial judge's own investigation amplified by his own declarations, make it apparent that his sentencing discretion was heavily influenced by his conclusion (without charge or evidence) that the defendant was part of an organized auto theft ring.[13] Thus, the court's persuasion, on matters not charged and not tried, shaped his judgment.

Even though the judge conducted his extramural investigation during the sentencing phase (when admittedly a court has more discretionary leeway), he exceeded his authority in telephoning the wife of the vehicle owner at all and, particularly, in determining what the husband "saw" through the wife's eyes. From this he drew conclusions obviously crucial to the sentencing decision. In this case the exact perimeters of sentencing discretion need not be determined. For here the actions of the court went beyond any defensible limit and, in effect, sentenced the defendant for acts neither charged nor proven. An abuse of discretion is clear.

It is also clear that a remand for resentencing will not cure the flaws in the process. The only correction of consequence is to grant the motion to vacate the previously entered plea of no contest and reinstate the plea of not guilty.

Under the circumstances, to deny defendant's motion was unreasonable. Refusal represented a second abuse of discretion.[14]

Judgment reversed and cause remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

PATTON, P.J., and CORRIGAN, J., concur.

---

[11] The policy of the law is to "discourage trial judges at any stage of the proceedings from promising criminal defendants that they will receive certain sentences if they plead guilty," *State* v. *Stanley* (Dec. 31, 1981), Cuyahoga App. No. 43469, unreported, at 8. At defendant's motion to withdraw hearing in the present case the judge suggested that counsel should have asked the court whether defendant would have received probation but defense counsel stated he had "never asked a judge that in my life."

[12] *Contra,* but not binding, is *United States* v. *Grayson* (1978), 438 U.S. 41, 42-44, 55.

[13] Defendant was charged only with CCW (R.C. 2923.12) and had no previous record except for the "no contest" plea in Lyndhurst Municipal Court growing out of the same incident.

[14] " 'The meaning of the term "abuse of discretion" in relation to the granting of a motion for a new trial connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court.'

"Such definition should be equally as applicable to a court's determination of a motion to change a plea." *State* v. *Amison* (1965), 2 Ohio App. 2d 390, 393 [31 O.O.2d 594].