OPINION
This matter arose out of an incident occurring on or about September 1, 1990. Appellant, Martin L. Evans, Sr., the victim, Richard Warner, and the witness, Gary D. Roth, went on a fishing trip on appellant's boat. Warner had been drinking beer throughout the morning. While fishing, appellant and Warner began to argue. After some amount of argument, appellant began steering the boat back to shore. The engine stalled, allegedly due to Warner manipulating the fuel line. Appellant went to the back of the boat toward Warner and the engine. A fight ensued and Warner ended up in the water with a slit throat. Roth and appellant got Warner back in the boat and returned to shore. Warner bled to death as a result of the cut to his throat.
The procedural history relevant to this appeal is as follows. On September 7, 1990, appellant was indicted on one count of murder, in violation of R.C. 2903.02, and one count of tampering with evidence, in violation of R.C. 2921.12. Prior to trial, the tampering with evidence charge was dismissed. The matter proceeded to jury trial on November 19, 1990. Appellant was found guilty of murder. On January 30, 1991, appellant was sentenced to a term of incarceration of not less than fifteen years nor more than life imprisonment. On appeal, we affirmed appellant's conviction and sentence. State v. Evans (Feb. 14, 1992), Lucas App. No. L-91-049, unreported. At trial, appellant was represented by Sheldon S. Wittenberg and, on appeal, in addition to Wittenberg, appellant was represented by Scott E. Spencer.
On September 20, 1996, appellant timely filed a petition for post-conviction relief. Appellant alleged in his petition the following: (1) he was denied his right of confrontation; (2) the prosecutor engaged in misconduct during closing arguments; (3) he was denied effective assistance of counsel; and (4) the trial court erred in not granting a mistrial after the victim's daughter told certain jurors that appellant was guilty "because he killed my dad." The state filed a motion for summary judgment/motion to dismiss on February 28, 1997. On March 28, 1997, without a hearing, the trial court granted the state's motion. On appeal from the denial of his petition, appellant raises arguments only as to his claim of ineffective assistance of counsel.
In his sole assignment of error, appellant asserts the following:
 "THE TRIAL COURT ERRED BY DISMISSING WITHOUT AN EVIDENTIARY HEARING APPELLANT'S POST-CONVICTION PETITION ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL WHEN APPELLANT HAS SUBMITTED EVIDENTIARY DOCUMENTS CONTAINING SUFFICIENT OPERATIVE FACTS TO DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL AND THE FILES AND RECORDS IN THE CASE DID NOT NEGATE HIS CONSTITUTIONAL CLAIMS AND RESPONDENT FAILED TO SUBMIT EVIDENCE OR AFFIDAVITS TO UNDERMINE APPELLANT'S CLAIM."
In his petition, appellant argued that he was denied effective assistance of counsel because his trial attorney had substantial evidence relevant to his defense of self-defense that was not presented. Appellant asserts that the evidence would have been highly relevant concerning who would be the aggressor in an altercation and what would be appellant's state of mind in deciding how to defend himself against the victim. Appellant attached to his petition affidavits and reports of interviews with people concerning the victim's aggression toward appellant.
Cindy Evans, wife of appellant and sister of victim, was interviewed by an investigator on November 5, 1990. According to appellant's mother, she got the report of Cindy's interview out of Wittenberg's case file after the trial. According to the report, Cindy gave information concerning the backgrounds of appellant, the victim, and Roth. Cindy said that Warner had "a very aggressive personality." When Warner was sober he was "the nicest person in the world," but was "extremely nasty" when drinking. Accordingly to Cindy, Warner had a death wish for appellant, particularly when drinking. When asked why, Cindy told the interviewer, "it was mostly because [Warner] hated [appellant] for hitting [her], but perhaps ten percent of his attitude was due to his drinking or his personality in general." She also stated in her interview that she told Warner appellant took some aggressive behavior out on their son as well. However, she did state that, in order to get attention from Warner, she overemphasized what appellant did to hurt her.
Appellant also attached to his petition the affidavit of Marsha Russell, sister-in-law of Warner. Russell testified regarding statements Roth had allegedly told her, and, without stating whether she had personal knowledge, Russell stated in her affidavit that Warner once threatened to beat up appellant and Warner's brother, her husband; that Warner had a violent temper in general; and that appellant did not appear to have a violent temper, even in confrontational situations.
Keith Harshman also provided an affidavit in which he stated that on July 15, 1992, [sic] Warner told Harshman that he hated appellant and wanted to mess him up. Harshman that also stated that, "Mr. Warner said he had death in his eyees [sic] for [appellant] and that he wanted to see him in his coffin and be the first one to kick dirt on it."
Henry Jockett was interviewed on November 9, 1990 and the report of his interview was also found in Wittenberg's file by appellant's mother. With respect to Warner, Jockett only stated that he knew Warner to be "cocky" and "egotistical" and that Warner was in a little better physical shape than appellant. The remainder of the interview concerned appellant's propensity to fight, his nature when intoxicated, and the fact that appellant's wrist which had previously been injured may have still been sensitive during the fight with Warner and may have put appellant at a disadvantage.
In order to demonstrate the prejudice appellant suffered by his counsel's failure to call these individuals at trial, appellant attached to his petition the affidavit of one of the jurors who convicted appellant. The juror stated in his affidavit:
 "2. There was discussion in the jury room as to what kind of people [appellant] and [Warner] were, but we didn't have any evidence of that to consider.
 "3. I have reviewed the defense investigator's statement from Cindy Evans, the affidavit of Keith Harshman and the interview of John Henry Jockett. The jury was not provided with this evidence.
 "4. If I had heard this evidence at trial, there is a reasonable probability that my verdict would have been different."
Lastly, appellant included the affidavit of attorney Ken Murray who stated that, in his opinion, the actions of appellant's counsel were "sufficiently egregious to undermine the confidence in the outcome of [appellant's] conviction." Specifically, Murray stated that appellant's counsel failed to fully investigate Warner's propensity for violence, especially while intoxicated, failed to gather evidence of Warner's long term propensity for violence, failed to present evidence regarding appellant's non-violent behavior, and failed to present a cohesive theory of self-defense.
On February 28, 1997, the state filed its motion for summary judgment/motion to dismiss. With respect to the ineffective assistance of counsel claim, the state argued that it was barred by the doctrine of res judicata and/or the claim was insufficiently supported by documentary evidence and failed to establish ineffective assistance of counsel.
On March 28, 1997, the trial court granted the state's motion and denied appellant's petition. The trial court found that appellant's claim was not barred by the doctrine of resjudicata because appellant was represented by the same counsel for both his trial and appeal. The trial court was not swayed by the argument that appellant had additional counsel on appeal who could have raised the argument of ineffective assistance of counsel, and stated, "It is incongruous for this Court to believe that Mr. Spencer would be inclined to raise an ineffective assistance of counsel claim, arguing his co-counsel's incompetence."
Thereafter, the trial court went on to consider whether appellant presented sufficient evidence to support his claim that his counsel was ineffective. The trial court found that appellant failed to support his claim of ineffective assistance of counsel and, therefore, was not entitled to a hearing on his petition or the relief sought. The trial court held:
 "After careful review of the trial transcript regarding the presentation of Petitioner's self-defense argument, the Court finds that the Petitioner has failed to support a claim of ineffective assistance of counsel. The portions of the transcript containing trial counsel's direct examination of Petitioner and cross-examination of witness Gary Roth is replete with instances where both were questioned as to the events leading up to the incident (i.e. the threats against Petitioner made by the victim), the amount of alcohol consumed by the victim, and a past act of violence committed by the victim and known by the Petitioner. * * * During his closing argument trial counsel reiterated the evidence adduced during trial as it pertains to the defense of self-defense."
The trial court stated further:
 "Moreover, how an attorney presents a case is a matter of strategy and choice and absent a showing of a `substantial violation of any of defense counsel's essential duties to his client,' State v. Wilkins
(1980), 64 Ohio St.2d 382, 390, quoting State v. Lytle
(1976), 48 Ohio St.2d 391-396-397, the attorney cannot be said to have failed in his or her duty to provide effective assistance to the defendant. The mere fact that Petitioner's counsel may not have presented every scintilla of potentially relevant evidence, without more, is insufficient to establish ineffective assistance."
We agree with the trial court. In order to be entitled to a hearing on a petition for post-conviction relief, a defendant must submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness. State v.Jackson (1980), 64 Ohio St.2d 107, syllabus. See, also, State v.Kapper (1983), 5 Ohio St.3d 36. Additionally, in general, matters which could have been raised on direct appeal may not be considered in post-conviction proceedings. State v. Ishmail
(1981), 67 Ohio St.2d 16. See, also, State v. Perry (1967),10 Ohio St.2d 175, paragraph seven of the syllabus. However, in Statev. Cole (1982), 2 Ohio St.3d 112, 113, n. 1, the court noted an exception to the application of the res judicata doctrine as follows: "[R]es judicata does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief." See, also, State v.Lambrecht (1989), 58 Ohio App.3d 86, 87.
Initially, we note that appellant was represented by Wittenberg at trial and on direct appeal. Although Spencer was also an attorney on direct appeal, we agree with the trial court that one additional counsel on appeal does not permit the application of res judicata to claims of ineffective assistance of counsel. It is unlikely that, as co-counsel with Wittenberg, Spencer would be inclined to assert a claim on appeal for ineffective assistance of trial counsel. Therefore, we will consider appellant's post-conviction argument that his trial counsel was ineffective.
In Ohio, a properly licensed attorney is presumed competent and the burden is upon the appellant to show counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391; Statev. Hamblin (1988), 37 Ohio St.3d 153. In Strickland v. Washington
(1984), 466 U.S. 668, the Supreme Court determined the standard to be applied to claims of ineffective assistance of counsel:
 "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." Id., at 686.
The Strickland court set forth a two-part test for reviewing claims of ineffectiveness:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
To establish prejudice, appellant must show that there is a reasonable probability that but for counsel's mistakes, the result of the trial would have been different. Strickland, supra.
Moreover, effective assistance of counsel does not guarantee results. State v. Longo (1982), 4 Ohio App.3d 136. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart (1988), 57 Ohio App.3d 4, 10. Furthermore, reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. See Strickland at 689. The decision of a trial counsel not to pursue every possible trial tactic for reasons of strategy does not result in ineffective assistance of counsel. State v.Brown (1988), 38 Ohio St.3d 305, 319.
After a thorough review of the trial transcript and the documents attached to appellant's petition, we find that appellant failed to submit evidentiary documents containing sufficient operative facts to support a claim of ineffective assistance of counsel. As such, appellant was not entitled to a hearing on his petition.
Under Ohio law, self-defense is an affirmative defense.State v. Martin (1986), 21 Ohio St.3d 91, affirmed Martin v. Ohio
(1987), 480 U.S. 228. In order to prevail on a claim of self-defense, appellant was required to establish each of the following elements by a preponderance of the evidence: (1) he was not at fault in starting the affray; (2) he had a bona fide belief that he faced imminent danger of death or great bodily harm; (3) his only means of escape was the use of such force; and (4) he violated no duty to retreat or avoid the danger. State v.Williford (1990), 49 Ohio St.3d 247, 249, citing, State v. Robbins
(1979), 58 Ohio St.2d 74, paragraph two of the syllabus. Upon a thorough review of the transcript, contrary to Attorney Ken Murray's opinion, it is clear that appellant's trial counsel presented a cohesive theory of self defense. Additionally, the record was replete with evidence concerning Warner's threats toward appellant and Roth on the day in question. Roth substantiated appellant's testimony that Warner told appellant prior to the physical altercation that (1) he had death in his eyes for appellant; (2) it would not bother him to leave appellant out in the lake and take his boat; and (3) he was interfering with the motor's operation to "fuck with [appellant]." The only alleged comments Roth could not verify were that Warner stated he hated appellant and wanted to see him in a coffin so he could be the first to throw dirt on it.
According to appellant, his trial counsel was ineffective for not presenting other witnesses to testify concerning Warner's propensity toward violence and dislike of appellant. Additionally, based on the affidavit of Attorney Murray, appellant asserts his counsel was ineffective because he failed to fully investigate Warner's propensity for violence and failed to present evidence of appellant's non-violent tendencies. We find, however, that the affidavits and reports provided by appellant indicate that an investigation was done prior to trial and, at a minimum, trial counsel knew as to what Cindy Evans and Henry Jockett would be willing to testify.
Moreover, we find that counsel's decision not to present character witness testimony was a reasonable trial tactic. By placing Cindy Evans on the stand, although she could have testified that Warner disliked appellant, it may also have come out that the reason he disliked appellant was because she told Warner that appellant hit her and took aggression out on their son. A suggestion that appellant was violent toward his family could have been highly prejudicial. Moreover, a considerable amount of discussion was had prior to trial concerning the state's potential witnesses. The state indicated a number of times that it could present several witnesses to rebut evidence of Warner's aggressive personality. Additionally, by presenting evidence of appellant's non-violent propensities, appellant's counsel would have opened the door for possible rebuttal testimony that appellant had a violent nature.
Ohio courts have found that decisions regarding the calling or not calling of witnesses for strategic reasons are part of counsel's trial tactics, and do not deny a defendant effective assistance of counsel. State v. Hunt (1984), 20 Ohio App.3d 310,312. As such, the record supports that trial counsel's tactical decisions were within "the wide range of professionally competent assistance" required of him. Strickland, 466 U.S. at 690.
Having found that trial counsel's representation did not fall below an objective standard of reasonable representation, we find that appellant did not establish the first part of the test for ineffective assistance of counsel. Therefore, it is unnecessary to consider whether appellant was prejudiced by his counsel's actions. Accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 Richard W. Knepper, J.
CONCUR.