DECISION.
Defendant-appellant Daniel Testerman broke into a detached residential garage. Unfortunately for Testerman, that garage had been burglarized just two days before and the owner had installed a sound monitor to alert him to any unusual activity. When the owner heard noises emanating from the newly installed monitor, he looked out of the window of his house and saw a beam of light sweeping through the interior of the garage. He called the police to investigate.
A struggle ensued when the police arrived. Testerman struck the first officer to respond with a large flashlight and cracked two of the officer's teeth. A total of three other officers responded and became involved in the attempt to restrain Testerman. Each was assaulted during the struggle. But Testerman was eventually subdued and arrested, and the grand jury indicted him on eight separate felony counts.
Before trial, Testerman's attorney and the prosecutor entered negotiations concerning a plea bargain. The state offered to drop two of the charges if Testerman would agree to plead guilty to the remaining six counts. Testerman apparently agreed and pleaded guilty to one count of felonious assault, two counts of breaking and entering, and three counts of assault. He faced a minimum of three years and a maximum of sixteen and a half years of incarceration on the six counts. The trial court sentenced him to thirteen years and two months, noting the severity of the one officer's injuries and Testerman's lengthy record of prior convictions. Testerman notified the court that he intended to appeal his sentence.
Nine days after having received his sentence, Testerman submitted a pro se motion to withdraw his guilty plea. The motion that was filed with the court was actually a copy of another person's motion. Testerman had lined out anything unique to the original movant, and left some broad allegations of constitutional violations. Apparently the trial court temporarily lost sight of the pro se motion, because when Testerman's newly appointed appellate counsel eventually appeared, he was quickly re-designated as his new trial counsel to argue the motion.
According to the new trial counsel, despite the broad language of the motion, Testerman's main argument was that, at some point during the plea-bargaining process, the state had agreed to recommend to the court a sentence of approximately six years. Whether Testerman himself rejected the offered recommendation and decided that he might receive a more lenient sentence from the court, or whether the court simply ignored the recommendation, would be conjecture based on the appellate record. Testerman was not in the courtroom that day, and no affidavits, testimony or other evidence was introduced in support of the motion, as might have been expected to substantiate conversations alleged to have occurred off the record.[1]
It is clear, though, that Testerman received a sentence over twice as long as what had been discussed during the plea-bargain process. It is also clear that there had been no formal agreed sentence before the court that would have precluded an appellate challenge to the sentence.[2]
The trial court denied the motion and Testerman now appeals. In his sole assignment of error, he argues that the trial court erred in denying his motion to withdraw his guilty plea. Testerman's counsel advances no substantive argument to support the assignment of error and even concedes that the assignment of error appears "unsubstantiated."
A defendant who wishes to withdraw his guilty plea after having already received his sentence "has the burden of establishing the existence of manifest injustice,"[3] and the motion should only be allowed in an extraordinary case.[4]
Otherwise, if a plea of guilty could be easily withdrawn after sentencing, "the accused might be encouraged to plead guilty to test the weight of the potential punishment, and withdraw the plea if the sentence were unexpectedly severe."[5]
We review a trial court's denial of a motion to withdraw a guilty plea according to an abuse-of-discretion standard[6] and thus may reverse if the decision was unsupported by a sound reasoning process.[7] Based on the record on appeal, we cannot conclude that the trial court's reasoning process was other than sound.
The trial court was thorough in questioning Testerman to ensure that he understood what rights he was relinquishing by entering a guilty plea. Testerman assured the court that he understood that he was giving up his right to a trial (1) by jury, (2) where witnesses would be required to testify under oath, and (3) where the state would be required to prove his guilt beyond a reasonable doubt. He said that he also understood that he was giving up the right to subpoena witnesses on his own behalf, to have those witnesses testify for him, and to testify in his own defense if he so chose.
But, more specifically, Testerman confirmed that he understood that, by pleading guilty, all that remained would be for the court to pass sentence. And when sentence was passed, "it [would] be too late to say, `I wanted a full trial.'" Further, both Testerman and his counsel, in response to specific questions from the court, separately answered that no promises or special representations had been made by anyone, including the prosecutor, to induce Testerman to plead guilty. The prosecutor confirmed those responses for the court. And finally Testerman told the court that he had been satisfied with the services of his attorney to that point in time.
The court's thorough investigation in determining that Testerman's plea was voluntary would seem to have left little room for him to later complain that he did not understand what rights he had relinquished. Unless Testerman could provide some reasonable explanation for claiming, as he does now, that his voluntary plea was actually involuntarily induced, Testerman should have been held to the acknowledgements he made before the court.[8]
Though we are not required to do so, in viewing Testerman's prose motion most charitably, we take it to allege that he answered all of the court's questions as he did because he thought he would not receive a sentence greater than six years. But even if Testerman's counsel had incorrectly advised him of the sentence he would likely receive, "manifest injustice *** does not ipsofacto result from counsel's erroneous advice concerning the sentence that will be imposed."[9]
There is a difference, though, between defense counsel's prediction of the sentence that his client will likely receive and defense counsel's representation to his client that there is some form of agreement as to the sentence. In the latter case, where defense counsel mistakenly represents to his client what has been promised by way of a sentence, and that erroneous representation plays a substantial part in the defendant's decision to plead guilty, then there is significant case law holding that a post-sentence withdrawal of the plea must be permitted to prevent manifest injustice.[10]
Unfortunately for Testerman, the record on appeal does not demonstrate why the six-year sentence that had been discussed during the plea-bargain negotiations was not the sentence that he ultimately received. There are no affidavits from the parties concerned, nor are there any other facts that would support the contention that Testerman substantially relied on a representation by his trial counsel in entering a guilty plea. Accordingly, the trial court properly concluded that Testerman had not met his burden to demonstrate the existence of manifest injustice, and it properly denied Testerman's motion to withdraw his guilty plea.
Therefore, the judgment of the trial court is affirmed.
 _______________________________ Painter, Judge.
 Hildebrandt, P.J., and Winkler, J., concur.
[1] See State v. Blackwell (May 1, 1998), Hamilton App. No. C-970150, unreported; State v. Collins (Feb. 13, 1998), Hamilton App. No. C-970138, unreported.
[2] See R.C. 2953.08(D).
[3] See State v. Smith (1977), 49 Ohio St.2d 261, 264,361 N.E.2d 1324, 1326, citing United States v. Mainer (C.A.3, 1967),383 F.2d 444. See, also, Crim.R. 32.1.
[4] See Smith, supra, at 264, 361 N.E.2d at 1326, citing UnitedStates v. Semel (C.A.4, 1965), 347 F.2d 228, certiorari denied (1965), 382 U.S. 840, 86 S.Ct. 90, rehearing denied (1965),382 U.S. 933, 86 S.Ct. 312.
[5] See State v. Peterseim (1980), 68 Ohio App.2d 211, 213,428 N.E.2d 863, 865, quoting Kadwell v. United States (C.A.9, 1963), 315 F.2d 667, 670, and citing Barker v. United States
(C.A.10, 1978), 579 F.2d 1219, 1223, United States v. Roberts
(C.A.D.C. 1977), 570 F.2d 999, 1008, and United States v. Read
(C.A.9, 1976), 534 F.2d 858, 859.
[6] See Smith, supra, at 263, 361 N.E.2d at 1326, citing UnitedStates v. Washington (C.A.3, 1965), 341 F.2d 277, certiorari denied (1965), 382 U.S. 850, 86 S.Ct. 96, rehearing denied (1965), 382 U.S. 933, 86 S.Ct. 317.
[7] See AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161,553 N.E.2d 597, 601; State v. Echols (1998), 128 Ohio App.3d 677, 700,716 N.E.2d 728, 744.
[8] See Allison v. Blackledge (C.A.4, 1976), 533 F.2d 894, 897.
[9] See State v. Blatnick (1984), 17 Ohio App.3d 201, 203,478 N.E.2d 1016, 1019 (citations omitted). See, also, State v.Collins (Feb. 13, 1998), Hamilton App. No. C-970138, unreported.
[10] See State v. Blatnick (1984), 17 Ohio App.3d 201, 203-204,478 N.E.2d 1016, 1020, citing United States v. Becklean (C.A.8, 1979), 598 F.2d 1122, 1125, certiorari denied (1979),444 U.S. 864, 100 S.Ct. 135; United States v. Hawthorn (C.A.3, 1974),502 F.2d 1183, certiorari denied (1976), 429 U.S. 894,97 S.Ct. 254; State v. Longo (1982), 4 Ohio App.3d 136, 140,446 N.E.2d 1145, 1149, quoting United States ex rel. Elksnin v. Gilligan
(S.D.N.Y. 1966), 256 F. Supp. 244, 249, citing United States exrel. Thurmond v. Mancusi (E.D.N.Y. 1967), 275 F. Supp. 508, 517;State v. Collins (Feb. 13, 1998), Hamilton App. No. C-970138, unreported.