DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Erie County Court of Common Pleas which denied the motion for new trial, based upon newly discovered evidence, and the petition for postconviction relief filed by appellant, Larry Lugli. Appellant was found guilty on one count each of rape, in violation of R.C. 2907.02(A)(1)(b), felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b), gross sexual imposition, in violation of R.C. 2907.05(A)(4), and sexual battery, in violation of R.C. 2907.03(A)(5), arising out of alleged conduct with his then three-year-old daughter. Appellant was sentenced on April 27, 1995 to two consecutive eight to twenty-five year terms of imprisonment. Appellant's conviction was affirmed by this court on August 30, 1996.State v. Lugli (August. 30, 1996), Erie App. No. E-95-025.
 {¶ 2} Appellant, through various counsel, filed a number of versions of a petition for postconviction relief and motion for new trial. On March 2, 2001, following a hearing on both, the trial court denied the motion and petition, without findings of fact or conclusions of law. Thereafter, on July 25, 2001, the trial court filed findings of fact and conclusions of law regarding the denial of appellant's motion for new trial and petition for postconviction relief.
 {¶ 3} Appellant appeals the denial of his motion and petition and raises the following assignments of error:
 {¶ 4} "Assignment of Error No. 1
 {¶ 5} "The trial court erred in denying the petition for postconviction relief when the representation of trial counsel was objectively deficient and prejudicial in ways which could be demonstrated only by evidence outside the trial record.
 {¶ 6} "Assignment of Error No. 2
 {¶ 7} "The trial court erred in denying the motion for new trial based on newly discovered evidence.
 {¶ 8} "Assignment of Error No. 3
 {¶ 9} "It constituted error not to make findings of fact with respect to the allegations of ineffective assistance of counsel in the postconviction relief proceeding.
 {¶ 10} "Assignment of Error No. 4
 {¶ 11} "The holding that trial counsel's performance did not fall below an objectively reasonable standard and/or constituted justifiable trial strategy is not supported by the record.
 {¶ 12} "Assignment of Error No. 5
 {¶ 13} "The holding that trial counsel's performance did not result in prejudice is not supported by the record."
 Petition for Postconviction Relief {¶ 14} Appellant sought postconviction relief pursuant to R.C.2953.21 on the basis that he was denied his constitutional right to the effective assistance of trial counsel. The state claims that the petition was untimely filed; however, upon review of the record, we find that appellant filed his petition within one year of the effective date of R.C. 2953.21, as amended by Section 3, S.B. 4, which applies in this case.
 {¶ 15} With respect to his petition, appellant argues that the trial court erred in finding that appellant was afforded the effective assistance of counsel during his trial. Appellant asserts that his trial counsel was ineffective in the following respects: (1) counsel failed to use evidence at their disposal to establish a defense and impeach the testimony of the victim's mother, Brandy; (2) counsel failed to use evidence at their disposal to cross-examine Kay Roberson, a licensed social worker with Huron County Children's Services, and demonstrate that her testimony was "simply false" in significant matters; (3) counsel failed to interview an available witness who could have been called to explain how the victim could have known about sex, without having been abused by appellant; (4) counsel failed to question the victim when given an opportunity to do so; (5) counsel "failed to notice important contradictions in the deposition testimony of Dr. Luciano"; and (6) counsel failed to have appellant present during Dr. Luciano's deposition testimony.
 {¶ 16} Appellant also argues that trial counsel was ineffective for failing to obtain an available expert to counter the state's experts, to testify for the defense regarding how the victim could "readily be induced to `remember' the events she claimed occurred even if they did not," and to testify that Roberson's interview techniques were unreliable and would increase the "likelihood of false memory and inaccurate accusations." Appellant further argued that counsel falsely led him to believe that an expert was standing by and ready to testify, thereby leading appellant to reject an offered plea agreement.
 {¶ 17} In general, matters which were or could have been raised on direct appeal may not be considered in postconviction proceedings, as such matters are res judicata. State v. Ishmail (1981), 67 Ohio St.2d 16,18, citing State v. Perry (1967), 10 Ohio St.2d 175, paragraphs seven, eight and nine of the syllabus. Some of appellant's arguments in his petition, however, concern matters de hors the record and therefore must be reviewed by this court.
 {¶ 18} In order for counsel's performance to be deemed ineffective, the burden is on appellant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; State v. Lytle (1976), 48 Ohio St.2d 391, vacated on other grounds (1978), 438 U.S. 910; and Strickland v.Washington (1984), 466 U.S. 668. Hence, to determine whether counsel was ineffective, appellant must show that (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense," in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Stricklandv. Washington (1984), 466 U.S. 668, 687.
 {¶ 19} In Ohio, a properly licensed attorney is presumed competent, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.'" Bradley, supra at 142, quoting Strickland at 689. Additionally, the effective assistance of counsel does not guarantee results. State v. Longo (1982),4 Ohio App.3d 136, 139. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart (1988), 57 Ohio App.3d 4, 10. Moreover, reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. See Strickland at 689. "Debatable trial tactics generally do not constitute a deprivation of effective counsel."State v. Phillips (1995), 74 Ohio St.3d 72, 85, citing, State v. Clayton
(1980), 62 Ohio St.2d 45, 49.
 {¶ 20} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, paragraph four of the syllabus. When making that determination, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." Lytle (1976), 48 Ohio St.2d 391, 396-397; and State v.Calhoun (1999), 86 Ohio St.3d 279, 289. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley at paragraph three of the syllabus; and Strickland, supra at 686.
 {¶ 21} In ruling on the petition, the trial court found that appellant's claims were barred by the doctrine of res judicata and that "the self-serving affidavits acquired by the Lugli family for the benefit of [appellant] do not rise to the level of nullifying the doctrine of res judicata." Additionally, the trial court found that appellant "was thoroughly questioned by this court at the conclusion of the trial, regarding his satisfaction with counsel and whether he felt there was anything else that should be presented for his defense." Based on this finding, the trial court held that "these inquiries nullify [appellant's] allegation of ineffective assistance of counsel." The trial court also found that appellant offered "nothing significantly different" from the theory the defense presented at trial, to wit, that the allegations of sexual abuse were false. After thoroughly reciting the law regarding ineffective assistance of counsel, including the fact that "mere strategic decisions on the part of defense counsel are not subject to evaluation," the trial court found that appellant's claims of ineffective assistance of counsel did not meet the Strickland test. For purposes of appeal, we will consider separately each of appellant's claims of ineffectiveness.
a. Expert Witness
 {¶ 22} At the hearing on his petition, appellant presented Dr. Melvin Guyer, an expert on child psychiatry, who testified, in part, that a child the age of the victim could easily be influenced into believing that events happened to her that did not actually occur, that the anatomically correct dolls used by Kay Roberson, as well as her interviewing techniques, could actually create or enhance fabricated recollections in the victim, that Roberson's techniques used to evaluate the victim were incorrect and unreliable, that the fact that a child who demonstrates a knowledge of sexual matter is not a reliable indicator that the child may have been sexually abused, and that Andrea Notaker, a social worker, was not qualified to render all the opinions she expressed. Insofar as the substance of what an expert could have testified to has now been made part of the record, appellant argues that he has established that his trial counsel was ineffective in not calling an expert and is entitled to postconviction relief. We disagree.
 {¶ 23} In his direct appeal to this court, appellant argued that his trial counsel was ineffective for failing to obtain an expert witness to counter the expert testimony presented by the state. In deciding this argument, we held that trial counsel's decision not to call an expert witness was "clearly a matter of trial strategy which does not demonstrate ineffective assistance of counsel." State v. Lugli (August. 30, 1996), Erie App. No. E-95-025. Although, through Dr. Guyer's testimony, we now know exactly what a defense expert could have testified to at trial, this information does not change the fact that decisions, such as the calling of witnesses, are within the purview of defense counsel's trial tactics. State v. Coulter (1992), 75 Ohio App.3d 219,230. Accordingly, insofar as this court has already determined, in appellant's direct appeal, that appellant's trial counsel was not ineffective for failing to call an expert, we find that the issue is res judicata. See State v. Ishmail, 67 Ohio St.2d at 18.
 {¶ 24} Additionally, although appellant suggests that he turned down a plea offer because he believed that an expert would be called on his behalf, we find that appellant never testified to such during the hearing on his petition. Rather, appellant testified that he "wasn't guilty" and that he "wasn't really wanting to accept a plea bargain." Moreover, when directly asked what his position would have been with respect to accepting a plea bargain had he known no expert was going to be called on his behalf, appellant responded, "I mean, I would definitely have to weigh all the circumstances at that point." Therefore, even if appellant's counsel had misled him into believing that an expert witness would be called in his behalf, insofar as there is no evidence that appellant would have accepted a plea had he known otherwise, we find that appellant failed to establish any prejudice.
b. Impeachment of Brandy, the Victim's Mother
 {¶ 25} At trial, Brandy testified that she had been intimate with appellant the evening of October 19, 1993, and had invited appellant to come over on the following day. On October 20, 1993, in response to statements made to her by the victim, Brandy testified that she took her to the doctor to be examined. Brandy was not home the remainder of the day on October 20, 1993. She returned home late after spending the evening with Jay Hershler, the father of her son. She had asked Hershler to spend the night. At 1:00 a.m. on October 21, 1993, appellant came to Brandy's home. According to Brandy, after ringing the doorbell numerous times, appellant entered the home through the unlocked entrance to the home. When appellant saw Brandy, he began to close the door. Brandy testified that she grabbed the door and said, "no, I think you better just leave." She then testified that he jerked the door out of her hand, slammed it, said he was not going anywhere, and asked, "What the f**k is going on?" Brandy testified that she told him she had taken their daughter to the doctor that day and that she was taking her to a specialist tomorrow. According to Brandy, without ever asking what was wrong with their daughter, appellant became very upset, "threw his arms out," repeatedly asked what she was talking about, and then came towards her. When appellant came towards Brandy, Hershler and appellant began to fight.
 {¶ 26} Appellant argues that Brandy's testimony made it appear that appellant must be guilty because he became angry and violent before being told that his daughter had been molested. In his petition, appellant asserts that trial counsel had evidence de hors the record, specifically a prior statement Brandy made to the police, that could establish Brandy had told appellant his daughter had been molested, and/or that he was the suspect, prior to appellant becoming angry and violent. Appellant argues that his counsel was ineffective for failing to cross-examine Brandy with this prior inconsistent statement.
 {¶ 27} First, it is not clear to this court that, based on Brandy's testimony, the only conclusion the jury could make was that appellant was angry and violent because he was guilty of sexually abusing his daughter. To the contrary, appellant elicited from Brandy on cross-examination that appellant flew into rages easily and that she was afraid to confront appellant regarding the abuse because "he was very violent and turned into a rage very easily over more simpler things than [their daughter] being molested."
 {¶ 28} Based on Brandy's testimony of the events, that she "grabbed" the door from appellant and demanded he leave immediately because their daughter had gone to the doctor that day and would be going to a specialist the next, it would seem that, at a minimum, Brandy was blaming appellant for whatever medical problem her daughter was suffering. Hence, given appellant's propensity to fly into rages, any accusation from Brandy could account for appellant's reaction.
 {¶ 29} Moreover, we note that defense counsel effectively called Brandy's veracity into question during cross-examination by establishing that she had previously lied under oath regarding other matters. And, further, in closing arguments, defense counsel argued that appellant's rage was based on the fact that he had been told his daughter had been molested and that he was being denied access to her. Based on the foregoing, we find that appellant did not establish that counsel's failure to cross-examine Brandy with her prior inconsistent statement was deficient representation.
 {¶ 30} Second, even if counsel's representation was deficient for failing to use Brandy's prior inconsistent statement, we find that appellant was not prejudiced from this failure. Given the overwhelming other evidence of appellant's guilt, we cannot say that the outcome of the trial clearly would have been different had appellant's counsel used Brandy's statement to the police to impeach her testimony.
c. Cross-examination of Roberson
 {¶ 31} Kay Roberson, a licensed social worker with Huron County Children's Services, testified regarding an interview she conducted with the victim. The interview was videotaped. Defense counsel did not cross-examine Roberson. Appellant argues that there were obvious discrepancies between Roberson's testimony and the video. As such, appellant argues that his trial counsel was ineffective for failing to cross-examine Roberson regarding these inconsistencies.
 {¶ 32} At the hearing on his petition, appellant's trial counsel testified that they decided not to cross-examine Roberson because the content of the videotape would have been damaging to the defense and they did not want to run the risk of it being played for the jury. We find that counsel's decision was clearly a matter of trial tactics and does not establish ineffective assistance of counsel. See Strickland, supra.
 {¶ 33} Appellant nevertheless argues that trial counsel could have played the video without sound to prevent the victim's statements from being heard. We find that it is mere speculation on appellate counsel's part that this would have been allowed by the trial court.
d. Failure to Call Witness
 {¶ 34} At trial, Andrea Notaker testified that, given the victim's very young age, for her to have any type of sexual knowledge which she could replay, the victim must have been exposed to some type of sexual activity. To rebut Notaker's testimony, appellant argues that counsel should have interviewed and called Randy McComas, who "would have testified to having seen Brandy and Jay Hershler engaged in oral sex on a couch in [the victim's] presence."
 {¶ 35} McComas testified during the hearing on the petition for postconviction relief that he had gone to Brandy and Hershler's home to buy marijuana sometime in perhaps the fall of 1991. Upon arriving at their home, McComas testified to the following:
 {¶ 36} "* * * when I stepped up on the porch I seen the back of Brandy's head on the couch. When I knocked on the door, Jay popped up from like he had been laying on her lap on the couch, I heard him say just a minute, and at that time, I observed Brandy kind of leaning, pushing against the back of the couch, you know, I assumed she was pulling her pants up."
 {¶ 37} McComas also testified that both the victim and Brandy's son were just feet away playing on the floor. McComas assumed, based on Brandy's movements and Brandy's and Hershler's seeming embarrassment, that Brandy and Hershler were engaged in oral sex at the time he knocked on the door. Despite McComas' assumption of what was happening, McComas clearly did not witness anything of the sort. According to his own testimony, his view was entirely blocked by the couch.
 {¶ 38} Insofar as McComas had no firsthand knowledge that the victim had been exposed to sexual activity while in her mother's care, we find that appellant's trial counsel was not ineffective in failing to interview or call McComas as a witness. Moreover, insofar as McComas had no firsthand knowledge that the victim had been exposed to sexual activity, we find that appellant was not prejudiced by counsel's failure to call McComas as a witness to rebut Notaker's testimony.
e. Re-examining the Victim
 {¶ 39} Appellant argues that trial counsel was ineffective in turning down an opportunity at trial to re-examine the victim. This argument involves no evidence de hors the record and could have been raised in appellant's direct appeal. Accordingly, appellant's argument is barred by the doctrine of res judicata. See State v. Ishmail,67 Ohio St.2d at 18.
f. Dr. Luciano's Deposition Testimony
 {¶ 40} Appellant argues that trial counsel was ineffective by not having appellant present at Dr. Luciano's deposition. Appellant asserts that he would have wanted to and was able to attend, but was never informed of the opportunity, and that "after watching the tape" at trial, he "seen some contradictions" in Dr. Luciano's testimony which he "could have clarified" had he been at the deposition.
 {¶ 41} First, we note that appellant's argument that he should have been in attendance at the deposition is a matter which could have been raised on direct appeal and, therefore, is barred by the doctrine of res judicata. See State v. Ishmail, 67 Ohio St.2d at 18. Second, we note that appellant never asserts what those alleged "contradictions" were. If Dr. Luciano contradicted himself during his testimony, that fact could have been brought up on direct appeal, and would now be barred by the doctrine of res judicata. If, however, the contradictions could only be established with evidence de hors the record in a petition for postconviction relief, appellant failed to offer any such evidence. Accordingly, we find that appellant's petition for postconviction relief on this basis was properly denied by the trial court.
 {¶ 42} Based on the foregoing, we find that appellant failed to establish that the performance of his trial counsel was deficient or that any perceived error was so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. We also find that appellant failed to establish that he was prejudiced by any alleged deficiency or that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Accordingly, we find that appellant was afforded a fair trial and substantial justice was done. Appellant's first, fourth and fifth assignments of error are therefore found not well-taken.
 {¶ 43} Appellant argues in his third assignment of error that the trial court erred in failing to make findings of fact with respect to the allegations of ineffective assistance of counsel in the postconviction relief proceeding. "A trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." State v. Calhoun (1999),86 Ohio St.3d 279, paragraph three of the syllabus.
 {¶ 44} Upon a thorough review of the 11 page decision by the trial court, we find that the findings of fact and conclusions of law satisfy the requirements of R.C. 2953.21, as discussed by the Ohio Supreme Court in Calhoun. Accordingly, appellant's third assignment of error is found not well-taken.
 Motion for New Trial {¶ 45} Appellant argues in his second assignment of error that the trial court erred in denying his motion for new trial based on newly discovered evidence. At the hearing on appellant's motion, George Elliott testified that he had overheard the victim's grandmother state that she would have the victim trained to know what to say when the victim got to the courtroom.
 {¶ 46} The trial court denied appellant's motion for new trial on the basis that it was untimely filed. Alternatively, the trial court held that even if the motion was properly filed, the newly discovered evidence appellant offered, George Elliott's testimony, was unreliable and that "the motion does not disclose a strong probability that granting it will change the results of the trial if a new trial is granted."
 {¶ 47} Crim.R. 33(B) states that a motion for new trial on account of newly discovered evidence shall be filed within 120 days after the day upon which the verdict was rendered or, "[i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." Appellant did not file his motion for new trial within 120 days. As such, appellant sought leave to file a motion for new trial.
 {¶ 48} On December 23, 1996, without finding, through clear and convincing evidence, that appellant was unavoidably prevented from the discovery of the evidence upon which he must rely, the trial court granted appellant leave to file his motion for new trial. Appellant filed his motion on January 13, 1997, which is obviously more than seven days from the court's order. However, on April 1, 1997, the trial court made the appropriate Crim.R. 33(B) findings, deemed the January 13, 1997 motion timely filed, and granted appellant additional time to file a supplemental motion for new trial. Based on the foregoing findings and orders by the trial court, we find that appellant's motion for new trial was timely filed. Accordingly, we will review on appeal the trial court's findings on the merits of appellant's motion for new trial.
 {¶ 49} The granting of a motion for a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court and in the absence of a clear showing of abuse of that discretion, the ruling will not be disturbed on appeal. State v. Williams (1975),43 Ohio St.2d 88, paragraph two of the syllabus. Additionally, the weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of the facts. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 50} "To warrant the granting of a motion for new trial in a criminal case based upon the ground of newly discovered evidence, it must be shown that the evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. King (1989),63 Ohio App.3d 183, 191, citing, State v. Petro (1947), 148 Ohio St. 505, syllabus; State v. Lopa (1917), 96 Ohio St. 410, approved and followed.
 {¶ 51} In this case, the trial court was present for Elliott's testimony and found that it was unreliable. Upon a thorough review of the record, we find that the trial court did not abuse its discretion in making this determination. Moreover, we find that the trial court did not abuse its discretion in finding that the newly discovered evidence did not disclose a strong probability that it would change the result of appellant's conviction if a new trial was granted. Accordingly, we find that appellant's second assignment of error is found not well-taken.
 Conclusion {¶ 52} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Erie County Court of Common Pleas, denying appellant's motion for new trial and petition for postconviction relief, is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
Peter M. Handwork, P.J. JUDGE, Richard W. Knepper, J. Mark L.Pietrykowski, J. JUDGE, CONCUR.