DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Erie County Court of Common Pleas which, following a jury trial, found appellant, Robert Hermann, guilty of (1) complicity to commit aggravated murder, in violation of R.C. 2903.01(A) and 2923.03(A); (2) complicity to commit murder, in violation of R.C. 2903.02(A) and 2923.03(A); (3) complicity to commit felonious assault, in violation of R.C. 2903.11(A)(1) and2923.03(A); and (4) tampering with evidence, in violation of R.C.2921.12(A)(1) and 2923.03(A). Appellant was sentenced to life in prison with no eligibility of parole for twenty year as to his aggravated murder conviction and, as to the tampering with evidence conviction, appellant was sentenced to five years in prison, to be run concurrently with his other sentence. At trial, evidence was adduced that established that appellant was the boyfriend of Melinda Vealey. Vealey lived with her father, Clarence Gunnoe. Gunnoe was killed on October 21, 2000, and his body was found in the bed of his pick-up truck on October 22, 2000. According to both Vealey and appellant, prior to Gunnoe's death, Vealey had told appellant that Gunnoe had sexually abused her as a child.
 {¶ 2} According to Vealey, on October 21, 2000, appellant had arranged with Vealey to come over to the Gunnoe home at 10:30 p.m. Appellant was dropped off by his mother at the scheduled time. Upon entering the house, appellant found Gunnoe and Vealey struggling. Vealey told appellant that Gunnoe was attempting to rape her. According to appellant, in his interview with the police, he hit Gunnoe at least twice in the face, causing Gunnoe to fall to the floor. Appellant also told police that Vealey hit Gunnoe over the head with an axe/sledgehammer handle. While Gunnoe was on the floor, Vealey strangled him to death.
 {¶ 3} The testimony regarding appellant's involvement during the actual moments of the strangulation varies. At one point, Vealey made a statement to the police wherein she implicated appellant by stating that, while Gunnoe was lying on the floor bleeding, appellant told her to "finish [Gunnoe] off," to "finish the job" and that he was "not going to jail or prison." Vealey stated that appellant threatened to kill her if she did not kill Gunnoe. Vealey also told the police that while she was strangling Gunnoe, appellant was holding Gunnoe's struggling hands. At trial, however, Vealey testified that she had lied to the police, appellant was not present during the strangulation, but had gone to check on Vealey's three year old daughter, who was present in the house at the time, and that appellant had told her to stop strangling Gunnoe. In his statement to the police, appellant also stated that he was in another room when Vealey strangled Gunnoe. When asked to explain Vealey's statement to the police that appellant held Gunnoe down while she strangled him, appellant stated to the police that Gunnoe had kicked him, he fell on Gunnoe's legs, and that Vealey could have seen appellant on Gunnoe's legs and interpreted it as appellant holding Gunnoe down.
 {¶ 4} Following Gunnoe's death, appellant's mother was called to the scene. Appellant took his mother's car and returned to his own home. Vealey cleaned up the blood in the house. Both Vealey and appellant denied that appellant had any part in cleaning the house; however, appellant told the police that he wiped off the handle that Vealey used to hit Gunnoe over the head.
 {¶ 5} Vealey testified that she put Gunnoe in the bed of his pick-up truck. After cleaning the scene, Vealey drove Gunnoe's body in Gunnoe's truck to a farmer's field, where they were found on October 22, 2000. Appellant's mother followed Vealey in Vealey's car. After disposing of the body, Vealey took appellant's mother home and returned to the Gunnoe home. Appellant and Vealey both deny that appellant had any part in disposing of the body.
 {¶ 6} On appeal, appellant raises the following assignments of error:
 {¶ 7} "First Assignment of Error
 {¶ 8} "The admission of Martha [sic] Vealey's out-of-court statement, in which she alleged that the defendant `ordered' her to kill Clarence Gunnoe, was an improper admission of hearsay, and was plain error that substantially contributed to the defendant's conviction and violated the confrontation clause of the Sixth Amendment to the United States Constitution and the right of confrontation guaranteed by Section10, Article I of the Ohio Constitution.
 {¶ 9} "Second Assignment of Error
 {¶ 10} "The defendant was denied effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the constitution of the state of Ohio.
 {¶ 11} "Third Assignment of Error
 {¶ 12} "The defendant's conviction for complicity to commit aggravated murder was not supported by sufficient evidence and was against the manifest weight of the evidence."
 {¶ 13} In his first assignment of error, appellant argues that the trial court erred in allowing the prosecution to examine Detective Paul Sigsworth regarding statements Vealey made during a videotaped confession, wherein she implicated appellant. At trial, the state did not question Sigsworth regarding Vealey's statement to the police during its direct examination of Sigsworth. During the cross-examination of Sigsworth, however, defense counsel questioned Sigsworth regarding Vealey's statement to the police. The state objected to this line of questioning on the basis that Vealey's statement was hearsay. Defense counsel stated that such testimony was permissible insofar as the state had established the existence of a conspiracy. On redirect, in response to questions asked by defense counsel during cross-examination of Sigsworth, the state questioned Sigsworth regarding Vealey's statement to the police. In addition, Vealey was later called as a defense witness and testified at length regarding her statement to the police.
 {¶ 14} Insofar as appellant's counsel failed to object to the admission of this evidence at trial, appellant waives all but plain error. State v. Jones (2001), 91 Ohio St.3d 335, 343. Because Vealey later testified at trial and was thoroughly examined by both parties regarding her statement to the police, we find that any error in the admission of hearsay was harmless and that there was no violation of appellant's right of confrontation. See State v. Tomlinson (1986),33 Ohio App.3d 278, 281; and State v. Keenan (1998), 81 Ohio St.3d 133,142. Additionally, because appellant's counsel was the first to question Sigsworth regarding Vealey's statement to the police, we find that appellant may not take advantage of an error which he himself invited or induced. See State v. Campbell (2000), 90 Ohio St.3d 320, 324.
 {¶ 15} Based on the foregoing, we find that any alleged error was waived by appellant and, in any event, was harmless.
 {¶ 16} Accordingly, the trial court did not error in admitting Sigsworth's testimony regarding Vealey's statement to the police. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 17} In his second assignment of error, appellant argues that he was denied effective assistance of counsel due to defense counsel's failure to object to the admission of Sigsworth's testimony regarding Vealey's statement to the police and due to counsel calling Vealey as a witness. Appellant asserts that, in an attempt to establish that the killing was in "self-defense," Vealey's testimony was only used to establish Gunnoe's prior sexual abuse of Vealey. Appellant, however, asserts that Vealey's testimony was unnecessary because the nature of Gunnoe's death (strangulation) eliminated appellant's ability to make use of the defense of "defense of others." Additionally, appellant asserts that Vealey's statement to the police was the "only evidence tending to establish that [appellant] participated in, encouraged or had any intent to kill Clarence Gunnoe." As such, appellant argues that by allowing Vealey's testimony and statement to the police, defense counsel's strategy was inherently flawed and fell outside the wide range of professionally competent assistance.
 {¶ 18} In Ohio, a properly licensed attorney is presumed competent and the burden is on the appellant to show counsel's ineffectiveness.State v. Lytle (1976), 48 Ohio St.2d 391; State v. Hamblin (1988),37 Ohio St.3d 153. To establish that trial counsel was ineffective, appellant must "show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland v.Washington (1984), 466 U.S. 668, 686.
 {¶ 19} Effective assistance of counsel does not guarantee results. State v. Longo (1982), 4 Ohio App.3d 136. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart (1988),57 Ohio App.3d 4, 10. Reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. SeeStrickland at 689.
 {¶ 20} In this case, appellant suggests that defense counsel should have attempted to prevent the introduction of Vealey's statement to the police and should not have called her as a witness because her testimony was unnecessary and, in fact, prejudicial insofar as it helped establish appellant's guilt. We note, however, that decisions such as the calling of witnesses are within the purview of defense counsel's trial tactics. State v. Coulter (1992), 75 Ohio App.3d 219, 230. Moreover, debatable trial tactics generally do not constitute a deprivation of effective counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85; Statev. Clayton (1980), 62 Ohio St.2d 45, 49.
 {¶ 21} In his statement to the police, appellant placed himself at the scene of the crime, admitted to being on Gunnoe's legs while Vealey strangled him, and admitted to wiping the blood off of the handle that was used to hit Gunnoe. Given appellant's own admissions, it was arguably sound trial tactics to call Vealey as a witness insofar as Vealey testified that she lied to the police and that appellant was not present when she strangled Gunnoe, did not help clean up in any way, and was not in charge of killing or disposing of Gunnoe.
 {¶ 22} In light of all the circumstances, we find that defense counsel's decision to call Vealey as a witness was not outside the wide range of professionally competent assistance. See Strickland at 690. Accordingly, we find appellant's second assignment of error not well-taken.
 {¶ 23} Appellant argues in his third assignment of error that his conviction for complicity to commit aggravated murder was not supported by sufficient evidence and was against the manifest weight of the evidence. Specifically, appellant argues that the state failed to prove that Gunnoe's murder was committed with prior calculation and design.
 {¶ 24} The state responds that this issue is not properly before the court because appellant failed to make a Crim.R. 29 motion for acquittal at the conclusion of the trial. The state is correct that a party waives any error, absent plain error, as to sufficiency of the evidence by failing to timely file a Crim.R. 29 motion for acquittal.State v. Roe (1989), 41 Ohio St.3d 18, 25; and State v. Moreland (1990),50 Ohio St.3d 58, 62. Nevertheless, "[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic." State v. Brown (July 14, 2000), Montgomery App. No. 17891. Regardless of the standard used, "`a conviction based on legally insufficient evidence constitutes a denial of due process,'" State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, citing Tibbs v. Florida (1982), 457 U.S. 31, 45; and Jackson v. Virginia
(1979), 443 U.S. 307, and should therefore be overturned.
 {¶ 25} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts.Thompkins at 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 26} Whereas, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins at 387. The appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 27} Appellant was convicted of violating R.C. 2903.01(A), which states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Upon reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 28} Approximately one month prior to Gunnoe's murder, there had been a burglary at the Gunnoe home. Gunnoe made a claim to his insurance company for the $7,000 in cash that had allegedly been taken out of a locked chest. According to Gunnoe's sister, Margaret Kraker, Gunnoe suspected Vealey and appellant of having stolen the money because Gunnoe found a hammer in the basement that had on it part of the cedar chest where the money was kept. Gunnoe came over to Kraker's house one week prior to his murder. According to Kraker, Gunnoe was very upset because, when he confronted Vealey about her and appellant having stolen the money, Vealey had cussed at Gunnoe. Gunnoe was also upset because he thought that appellant was a nice guy, but after the robbery, appellant had never come back to the house.
 {¶ 29} One week after this confrontation with Vealey, after spending the day together, Vealey and appellant arranged to have appellant arrive at the Gunnoe home at a particular time in the late evening. Vealey arranged for her ten year old son to spend the night at a friend's house. At the arranged time, rather than take his own truck, appellant had his mother drop him at the Gunnoe home. At the moment of appellant's arrival, Vealey was involved in a struggle with Gunnoe. Vealey and appellant proceeded to beat Gunnoe until he was bleeding profusely and lying on the ground pleading for his life. While Vealey strangled Gunnoe, appellant restrained him from struggling.
 {¶ 30} Appellant's mother was then called to the scene again. Appellant took his mother's car home, leaving her behind with Vealey. When he arrived home, to explain his absence, appellant stated that he told his live-in girlfriend that he had been outside in the garage. Gunnoe's truck and body were then driven to and left in a farmer's field. When questioned by the police, Vealey initially told them that Gunnoe had left to visit his brother in West Virginia. Appellant also initially lied to the police about whether he had been present in the Gunnoe home on October 21, 2000.
 {¶ 31} Although Vealey and appellant both claim the strangulation was a spontaneous reaction to Gunnoe's attempt to rape his grown daughter and his threats to kill them, any rational trier of fact could have found that the events surrounding Gunnoe's murder established that appellant and Vealey planned to murder Gunnoe with prior calculation and design. Accordingly, we find that there was sufficient evidence upon which the jury could have relied in finding appellant guilty of aggravated murder.
 {¶ 32} Additionally, upon review of the entire record, and after weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and resolving conflicts in the evidence, we find that the jury did not clearly lose its way.
 {¶ 33} Accordingly, we find that the jury's verdict did not create such a manifest miscarriage of justice that the conviction must be reversed. We therefore find appellant's third assignment of error not well-taken.
 {¶ 34} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Erie County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.