OPINION
{¶ 1} On July 26, 2001, defendant, Harold R. Williams, was indicted by a Franklin County Grand Jury on two counts of attempted murder in violation of R.C. 2923.02 as it relates to R.C. 2903.02, two counts of felonious assault in violation of R.C. 2903.11, one count of aggravated arson in violation of R.C. 2909.02, and one count of unlawful possession of a dangerous ordnance in violation of R.C. 2923.17. The incident giving rise to the indictment occurred on March 31, 1996. On that date, a highly sophisticated car bomb exploded and severely injured the occupants, defendant's estranged wife, Jacklyn Williams ("Jacklyn"), and her then-boyfriend, Kenneth Forney.[1]
 {¶ 2} After a jury trial, defendant was convicted of all six counts in the indictment. The trial court sentenced defendant to a prison term totaling 26 to 60 years. Defendant has timely appealed the trial court's judgment, setting forth four assignments of error for our review:
 {¶ 3} "[I.] The defendant-appellant was denied the effective assistance of counsel as guaranteed under the Fifth, Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 4} "[II.] Structural error occurs when the trial court fails to remove a juror who has evidence[d] an inability to be fair and impartial thereby violating defendant's constitutional rights.
 {¶ 5} "[III.] The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 6} "[IV.] The trial court abused its discretion by permitting an expert witness to testify and render an opinion in violation of the Ohio Rules of Evidence thereby depriving the defendant-appellant of his right to a fair trial."
 {¶ 7} Jacklyn and defendant were married in 1986. One child, a daughter, Nyssa, was born as issue of the marriage.
 {¶ 8} Defendant was employed as an electrical engineer at an airfield lighting manufacturing company. In his capacity as an electrical engineer, defendant worked on projects requiring specialized technical knowledge of sophisticated electronic circuitry. Defendant often worked on electronic projects at home with his friend, Michael Friedman. In addition to having an interest in electronics, Friedman was also extremely interested in firearms and ballistics. In addition to his work with defendant on electronics projects, Friedman often socialized with defendant and Jacklyn and was especially fond of Nyssa.
 {¶ 9} Defendant and Jacklyn separated in 1993. Soon thereafter, Jacklyn began a romantic relationship with Friedman, which lasted less than one year. Despite Friedman's relationship with his estranged wife, defendant remained friendly with Friedman. Shortly after her relationship with Friedman ended, Jacklyn began dating Forney and the two soon began living together. According to Jacklyn, both defendant and Friedman were unhappy about Jacklyn's relationship with Forney.
 {¶ 10} In 1995, defendant instituted divorce proceedings against Jacklyn. Thereafter, the two became embroiled in a custody battle over Nyssa. According to Friedman, defendant became extremely dissatisfied with Jacklyn's care and supervision of Nyssa. In particular, defendant was concerned with Nyssa's safety while she was with Jacklyn. To that end, defendant once asked Friedman what he thought of the idea of shooting Jacklyn. Friedman told him that he would not participate in such a plan. Thereafter, in late 1995 and early 1996, defendant discussed with Friedman his plans to "get [Jacklyn's] attention" by using a bomb to destroy her vehicle. Defendant felt that such action would impress upon Jacklyn that she was not "untouchable" and that she needed to be more concerned with Nyssa's safety. (Tr. 406.) Friedman agreed to assist defendant in this endeavor because he was similarly concerned with Nyssa's well-being. Despite defendant's earlier musings about shooting Jacklyn, Friedman thought defendant only intended to scare Jacklyn with a car bomb, not injure her. Indeed, Friedman and defendant discussed planting a bomb underneath the rear of Jacklyn's vehicle which would rupture the fuel tank without destroying the passenger compartment.
 {¶ 11} Defendant and Friedman meticulously planned the bombing for over two months, taking care to use components that were already stockpiled in defendant's home electronics laboratory so as to be untraceable. In addition, defendant and Friedman were careful to utilize materials that would be nearly impossible to identify after an explosion. According to Friedman, defendant was the mastermind behind the bombing project, designing electronic components which served as the motion sensor and timing device. Friedman assumed the role of assistant lab technician due to his expertise in ballistics. To that end, Friedman determined that a double-base smokeless powder containing nitroglycerine and nitrocellulose placed inside a small vessel would provide the biggest, most efficient explosion possible. Construction of the bomb was completed on March 29, 1996. Defendant and Friedman drove to Jacklyn's apartment after midnight on March 31, 1996, and defendant planted the bomb underneath Jacklyn's car.
 {¶ 12} That morning, Jacklyn, a registered nurse, was scheduled to work at 7:00 a.m. Forney offered to drive Jacklyn to work, and the two left home at approximately 6:30 a.m. Enroute to the hospital, Forney and Jacklyn heard an unusual clicking sound coming from behind the driver's seat. Shortly thereafter, the car exploded. Jacklyn and Forney suffered severe injuries as a result of the explosion. Forney spent several months in the hospital with second and third degree burns over 60 percent of his body. Jacklyn also suffered severe burns and was hospitalized.
 {¶ 13} Investigators from the Franklin County Sheriff's Office, Columbus Division of Fire, Columbus Police Department ("CPD") and the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") arrived at the scene shortly after the explosion. Debris, explosive residue and other physical evidence recovered from the scene, along with over 100 crime scene photographs, were sent to an ATF laboratory for analysis and evaluation. The ATF's analysis revealed that residue found on pieces of metal from the rear of the vehicle contained the presence of nitroglycerine and nitrocellulose, i.e., the components for dynamite and double-based smokeless powder. Evidence recovered from defendant's home included residue swabs taken from a workbench which also revealed the presence of nitroglycerine and nitrocellulose.
 {¶ 14} In July 2001, Michael Eggleston, an experienced bomb technician with the ATF, was assigned to investigate the cause of the blast. Because the explosion had occurred five years earlier, Eggleston relied heavily on evidence that had been collected from the scene shortly after the incident, including physical evidence, witness statements and photographs taken at the scene; in addition, he reviewed several ATF laboratory reports. Based upon this evidence, Eggleston determined that the blast resulted from a highly sophisticated bomb that had been placed near the car's left rear axle and attached to the gasoline tank. Eggleston further determined that the bomb detonated via a motion sensor attached to a timing device. Eggleston opined that the person or persons who constructed the bomb were extremely skilled in the science of electronics and were well-versed in the area of explosives.
 {¶ 15} At some point during Eggleston's investigation, Friedman provided information regarding construction of the bomb. According to Eggleston, the information provided by Friedman was consistent with the physical evidence obtained from the crime scene.
 {¶ 16} Friedman and defendant were arrested in July 2001. Both were charged with two counts of attempted murder, two counts of felonious assault, one count of aggravated arson, and one count of possession of a dangerous ordnance. In exchange for testifying against defendant at trial, Friedman pled guilty to a single count of attempted aggravated arson.
 {¶ 17} While in jail pending trial, defendant had several conversations with a fellow inmate, Darrell Horton, about bomb making. In one such conversation, defendant told Horton that his wife had cheated on him and he had "fix[ed] her" by making a bomb. (Tr. 164.) Defendant also told Horton that he had hidden some of the tools he used to make the bomb so the police would not find them.
 {¶ 18} In his first assignment of error, defendant contends that he was denied the effective assistance of counsel in violation of the United States and Ohio Constitutions.
 {¶ 19} In State v. Johnson (May 30, 2000), Franklin App. No. 99AP-753, this court explained the applicable standard for addressing a claim of ineffective assistance of counsel:
 {¶ 20} "In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-prong test enunciated inStrickland v. Washington(1984), 466 U.S. 668, 104 S.Ct. 2052 * * *. Initially, defendant must show that counsel's performance was deficient. To meet that requirement, defendant must show that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment. Defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id.at. 690
 {¶ 21} "Next, if defendant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires defendant to prove prejudice in order to prevail. Id. at 692. To meet that prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable.Id. at 687. See, also, State v. Underdown (1997), 124 Ohio App.3d 675,679 * * *. A defendant meets the standard with a showing `that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id. at 694."
 {¶ 22} A properly licensed attorney is presumed competent. Vaughnv. Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is " `a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *.' " State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, at 689. Additionally, the effective assistance of counsel does not guarantee results. State v.Longo (1982), 4 Ohio App.3d 136, 139. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart (1988), 57 Ohio App.3d 4,10. Moreover, reviewing courts must not use hindsight to second-guess trial strategy and must keep in mind that different trial counsel will often defend the same case in different manners. See Strickland, at 689.
 {¶ 23} Defendant first contends that defense counsel was ineffective in failing to produce evidence in support of his motion to dismiss the indictment.
 {¶ 24} In United States v. Lovasco(1977), 431 U.S. 783,97 S.Ct. 2044, the United States Supreme Court set forth a two-part test to determine whether a defendant has been denied due process as the result of a pre-indictment delay. A defendant has the burden of establishing that the delay resulted in actual prejudice to the defendant. Once the defendant has established actual prejudice, the burden shifts to the state to justify the delay. See, also, State v. Luck (1984),15 Ohio St.3d 150, 153-154; and State v. Whiting (1998), 84 Ohio St.3d 215,216.
 {¶ 25} Defense counsel filed a pretrial motion to dismiss the indictment, alleging that the over five-year delay in indicting defendant was both unjustified and resulted in actual prejudice to defendant. A hearing was held on the motion, during which defense counsel argued that defendant was prejudiced because the crime scene had vanished and was not available for inspection by defendant's experts. Counsel further argued that one of his witnesses could not remember making any statements at the time of the incident, that the memories of defense witnesses, including defendant's, had faded, and that some defense witnesses could not be located. Counsel further argued that the state's delay in indicting defendant was unjustified because the physical evidence to be presented by the state was available at the time the crime was committed. Defense counsel called no witnesses nor submitted any evidence in support of the motion.
 {¶ 26} Columbus Police Detective Edward Kallay[2] testified at the hearing on behalf of the state. Detective Kallay testified that over 300 pieces of physical evidence were processed and analyzed by the ATF. The CPD did not receive the final ATF report until April 2000 because the ATF was investigating larger explosions of national significance.
 {¶ 27} After further argument by counsel, the trial court summarily overruled defendant's motion.
 {¶ 28} Defendant argues on appeal that defense counsel was ineffective in failing to call witnesses or present other evidence at the hearing that would have established actual prejudice suffered by defendant. Initially, we note that defendant fails to specify what witnesses, expert or otherwise, or what evidence defense counsel could have presented at the hearing that would have established actual prejudice. Further, as noted previously, Eggleston was not assigned to work on the case until 2001. Since Eggleston was able to testify competently regarding the physical evidence, there is no basis to presume that defense experts would have established that the passage of time prejudiced defendant. Moreover, even if defendant had presented evidence sufficient to establish that the delay resulted in actual prejudice to him, the state's evidence regarding the ATF's inability to analyze samples from the crime scene more expeditiously was sufficient to establish that the delay was justified. Thus, we cannot say that defendant was rendered ineffective assistance of counsel because counsel did not produce evidence at the pretrial hearing on his motion to dismiss the indictment.
 {¶ 29} Defendant next contends that defense counsel was ineffective in stipulating to certain physical evidence recovered during the investigation. In particular, defendant contends that defense counsel stipulated to evidence that traces of nitroglycerine and nitrocellulose, the basic components of the double-based smokeless gunpowder used in the bomb, were found on a workbench in defendant's home.
 {¶ 30} Initially, we note that contrary to defendant's assertion, defense counsel did not "stipulate" to this physical evidence. Defense counsel merely agreed to permit an arson investigator from the Columbus Division of Fire to testify as to the results of the ATF's analysis of the physical evidence and information contained in the ATF's laboratory reports which documented the finding of nitroglycerine and nitrocellulose both on metal fragments recovered at the scene of the explosion and on a workbench in defendant's residence. The agreement was apparently made to expedite the prosecution's presentation of its case-in-chief. Indeed, the prosecution noted on the record that counsel had agreed to this procedure so that the prosecution would not have to call additional ATF witnesses to testify regarding the laboratory reports.
 {¶ 31} Moreover, we cannot find that defense counsel was ineffective in agreeing to permit the arson investigator to testify regarding the information contained in the ATF laboratory reports. The arson investigator testified that ATF's involvement in the investigation of the explosion, including the ATF's analysis of evidence collected in connection with the investigation, came at his behest. He further testified that he worked closely with personnel at the ATF laboratory during the course of the investigation. Indeed, the arson investigator's "contact person" at the laboratory assisted him in the collection of evidence. Based on this testimony, it appears that the arson investigator had significant knowledge concerning the contents of the ATF laboratory reports such that defense counsel's decision to agree to permit him to testify regarding the contents of the laboratory reports, rather than require the state to produce additional ATF witnesses, was reasonable.
 {¶ 32} In addition, even if defense counsel had stipulated to the information contained in the reports, defendant has not demonstrated that such a stipulation constituted ineffective assistance of counsel. The defense's theory of the case was that Friedman acted alone in constructing the bomb in response to Jacklyn's rejection of him in favor of Forney. The defense's theory did not question the fact or nature of the explosion and relied on this same physical evidence to link Friedman to the materials used in building the bomb.
 {¶ 33} Defendant further argues that defense counsel was ineffective in failing to object during cross-examination of a defense witness.
 {¶ 34} The defense called Judy Rings, defendant's sister, as a witness to establish an alibi defense. During cross-examination, the prosecutor asked Rings if she had ever discussed the specifics of the bombing with defendant. Rings responded that she never asked defendant if he had taken part in the bombing because "in [her] heart [she] did not want to know" and because she "had feelings" that he might have been involved. (Tr. 582-583.) Defense counsel did not object to Rings' testimony. Defendant maintains that Rings' admission that she was afraid that defendant may have committed the crime rendered her testimony objectionable as prejudicial and irrelevant, and accordingly, defense counsel's decision to call Rings as a witness and his failure to object to her testimony amounted to ineffective assistance of counsel. We disagree.
 {¶ 35} Defense counsel had no basis to object to the cross-examination of Rings. Contrary to defendant's contentions, the prosecution's questions were relevant concerning Rings' credibility and possible bias in this case. Evid.R. 616(A) states that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." In this case, Rings' suspicion that defendant committed the crime was relevant to develop her bias, prejudice, or interest in fabricating an alibi to protect him.
 {¶ 36} We further find defense counsel's decision to call Rings to testify a reasonable trial strategy, given her alibi testimony that defendant was at her parents' home at the time he was alleged to have planted the bomb in Jacklyn's car. As to Rings' testimony regarding her thoughts that defendant may have been involved in the crime, there is no basis in the record to conclude that defense counsel had any warning of this testimony prior to trial. Indeed, Rings' suspicions became known at trial only after prolonged and diligent cross-examination by the prosecution.
 {¶ 37} Finally, defendant maintains that defense counsel was ineffective in failing to object to the trial court's impaneling of a juror. During the trial, one of the regular jurors was unable to complete jury service. During voir dire of the first alternate juror, the juror expressed concern about his ability to serve as an impartial juror, given that he was in the midst of a personal divorce and custody battle. In particular, the juror stated that he was "traumatized" by his domestic situation and that "it could influence [his] decision." (Tr. 75.) He further stated that he empathized with defendant, "as far as having a child and going through a rough divorce and having your fatherhood taken away from you." (Tr. 75.) When asked if he could make a fair and impartial decision based upon the facts as presented at trial, the juror responded that he was unsure "whether [defendant] is guilty or innocent * * * [but] let me just say if somebody did that, and I cannot say I had those thoughts of anger and rage, the wrongfulness of that * * * but I can identify with the thought and things that he was going through * * *." (Tr. 77.) After further questioning by the court, the juror ultimately stated that he could act as an impartial juror. Neither the prosecutor nor defense counsel objected to the trial court impaneling the juror.
 {¶ 38} As we have previously stated, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. See State v. Phillips (1995),74 Ohio St.3d 72, 85.
 {¶ 39} Defendant contends that defense counsel was ineffective in failing to object to the court impaneling this juror. In particular, defendant contends that the juror's statements regarding his own divorce and child custody problems called into question his ability to be fair to defendant. Further, defendant argues that the juror's comments regarding defendant's "thoughts of anger and rage" revealed that the juror had already formed an opinion that defendant was guilty of the crime.
 {¶ 40} "The selection of jurors is within the ambit of trial strategy." State v. Valle (Mar. 13, 2000), Stark App. No. 1999CA00079. Defense counsel's failure to object to the juror may be viewed as a valid trial strategy in that defense counsel may have intended to place on the jury a juror who presumably would have empathized with defendant's domestic circumstances. Further, the court, the prosecutor and defense counsel questioned the juror at length regarding his ability to act fairly and impartially. Although the juror gave somewhat conflicting statements in response to these questions, he ultimately stated that he could decide the case on the evidence before him. The court was satisfied that the juror could render an impartial verdict according to the law and evidence submitted to the jury at trial. Moreover, the juror prefaced his "anger and rage" comments with a statement that he was uncertain whether defendant was innocent or guilty. Thus, we cannot agree with defendant's contention that the juror was predisposed to finding defendant guilty. In short, because the juror in this case indicated he could be fair and impartial, defense counsel was not ineffective in failing to object to the court impaneling the juror.
 {¶ 41} Accordingly, defendant's first assignment of error is overruled.
 {¶ 42} By his second assignment of error, defendant contends that the trial court's decision to impanel the alternate juror constituted structural error and therefore is not subject to harmless-error analysis. We disagree.
 {¶ 43} In State v. Esparza (1996), 74 Ohio St.3d 660, the Ohio Supreme Court noted that the United States Supreme Court has distinguished between two different types of constitutional error: "trial error" and "structural error." These errors are defined as follows:
 {¶ 44} "* * * Trial error `occur[s] during the presentation of the case to the jury, and * * * may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' [Arizona v. Fulminate
(1991)], 499 U.S. [279] at 307-308, 111 S.Ct. [1246] at 1264, 113 L.Ed.2d [203] at 330. Structural error affects `the entire conduct of the trial from beginning to end' as well as `the framework within which the trial proceeds.' Such errors `defy analysis by "harmless-error" standards.' Id. at 309-310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331. * * *" Id. at 661.
 {¶ 45} Structural errors "deprive defendants of `basic protections' without which `a criminal trial cannot reliability serve its function as a vehicle for determination of guilt or innocence * * * and no criminal punishment may be regarded as fundamentally fair.' " Statev. Hill (2001), 92 Ohio St.3d 191, 197, quoting Neder v. United States
(1999), 527 U.S. 1, 7-9, 119 S.Ct. 1827.
 {¶ 46} Defendant argues that the trial court's error in impaneling a juror, who, according to defendant, evidenced an inability to fairly and impartially render a verdict in his case constituted structural error.
 {¶ 47} As we have previously noted, the trial court carefully explored the possibility of juror bias through its own thorough questioning, as well as questioning by defense counsel and the prosecution. The court was satisfied that the juror could render an impartial verdict according to the law and evidence submitted to the jury at trial. By assuring that the juror was unbiased, the trial court achieved its end of a reliable and fundamental fair verdict. Consequently, no structural error has been shown.
 {¶ 48} Further, the impaneling of the alternate juror does not rise to the level of plain error. As noted previously, defense counsel did not object to the juror's service on the jury. The failure to promptly object and call any error to the attention of the trial court, at a time when it could have been prevented or corrected amounts to a wavier of all but plain error. State v. Lott (1990), 51 Ohio St.3d 160, 174, citing State v. Gordon(1971), 28 Ohio St.2d 45, paragraph two of the syllabus. " `Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " State v. Landrum(1990),53 Ohio St.3d 107, 111, quoting State v. Long (1978), 53 Ohio St.2d 91. The plain error rule should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise. See State v.Underwood (1983), 3 Ohio St.3d 12, 14.
 {¶ 49} "[D]etermination of issues raised in voir dire in criminal cases is within the discretion of the trial judge." State v. Davie
(1997), 80 Ohio St.3d 311, 316, citing State v. Beuke (1988),38 Ohio St.3d 29, 39. Here, we cannot find that the trial court's conduct during voir dire of the alternate juror amounts to plain error. Given that the trial court questioned the juror at length about his ability to render an impartial verdict and that the juror ultimately stated that he could decide the case based upon the evidence before him, we fail to see how defendant was prejudiced by the inclusion of the alternate juror on the jury panel. Accordingly, we find that the trial court did not commit plain error in impaneling the juror. Defendant's second assignment of error is overruled.
 {¶ 50} In his third assignment of error, defendant challenges his convictions as being against the sufficiency and manifest weight of the evidence.
 {¶ 51} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In reviewing a claim that a criminal conviction is against the sufficiency of the evidence, an appellate court must determine whether the evidence presented at trial, viewed in a light most favorable to the prosecution, would allow a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins, supra, at 386.
 {¶ 52} In determining whether a conviction is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Id. at 386. The appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine " `whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " Id., quoting State v. Martin(1983),20 Ohio App.3d 172, 175. " `The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " Id. It is axiomatic, however, that "[o]n the trial of a case, whether civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 53} Defendant's brief sets forth the pertinent legal standards for reviewing a criminal conviction on sufficiency and manifest weight grounds. Then, instead of separately stating his arguments with accompanying citations to appropriate authorities, statutes, and parts of the record on which he relies, as is required by App.R. 16(A)(7), defendant's argument simply states: "Defendant-Appellant would ask the court to examine each and every count in which the jury returned guilty verdicts to determine whether or not sufficient evidence existed and/or if the verdicts were against the manifest weight of the evidence." (Defendant's brief at 19.)
 {¶ 54} A defendant bears the burden of affirmatively demonstrating error on appeal. Ivery v. Ivery (Jan. 12, 2000), Summit App. No. 19410. "It is the duty of the [defendant], not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), Summit App. No. 2783-M. It is not appropriate for this court to construct the legal arguments in support of an appellant's appeal. ("[I]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.") Cardone v. Cardone (May 6, 1998), Summit App. No. 18349; see, also, Kremer v. Cox (1996), 114 Ohio App.3d 41,60 (it is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error). If the party presenting an assignment of error for review fails to identify in the record the error on which it is based, the appellate court may disregard the assignment of error. App.R. 12(A)(2).
 {¶ 55} Since defendant in the instant case did not present any legal arguments and/or cite appropriate authorities, statutes or any portion of the record in support of this assignment of error, this court would be justified in disregarding it. However, in the interests of justice, we have thoroughly reviewed the record before us and conclude that the evidence was sufficient to support defendant's convictions and that his convictions were not against the manifest weight of the evidence. Accordingly, the third assignment of error is overruled.
 {¶ 56} By his fourth assignment of error, defendant contends that the trial court erred in permitting the testimony of the state's expert witness, ATF Agent Eggleston.
 {¶ 57} Initially, we note that defendant's assignment of error must be reviewed under the plain error standard, as no objection was made to Eggleston's testimony.
 {¶ 58} "`The admission or exclusion of expert testimony is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion * * *. An abuse of discretion connotes an arbitrary, capricious or unconscionable decision by the trial court. * * *' " Shivers v. Univ. of Cincinnati, Franklin App. No. 02AP-395, 2002-Ohio-6633, at ¶ 12, quoting Swift v. Allied Pest Control (Aug. 31, 2001), Montgomery App. No. 18311. Nonetheless, " `every opinion, whether by an expert or lay person, must have a proper foundation [the factual basis of the conclusion] to be admissible.' " Id. quoting Statev. President (Apr. 21, 1993), Lorain App. No. 92CA005408.
 {¶ 59} The Ohio Rules of Evidence permit testimony by experts in the form of an opinion or otherwise. In order for a witness to offer expert testimony, the following requirements must be met: (1) the witness's testimony must either relate to matters beyond the knowledge or experience of lay persons or dispel a misconception commonly held by lay persons; (2) the witness must have specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony that qualifies the witness as an expert; and (3) the witness must base the testimony on reliable scientific, technical or other specialized information. Evid.R. 702. An expert may base an opinion on facts or data perceived by the expert or admitted in evidence at the hearing. Evid.R. 703. Evid.R. 705 further provides that the expert must identify the facts or data supporting his or her opinion and that such disclosure may be made in response to a hypothetical question.
 {¶ 60} Defendant contends that Eggleston's testimony should not have been admitted because it was elicited in response to a hypothetical question which was based upon facts or data that had yet to be admitted into evidence; i.e., Friedman's testimony regarding the description of the explosive device. Although facts or data underlying the expert opinion should be admitted prior to the expert's testimony, the failure to do so is not reversible error if the evidence as to the underlying facts is eventually admitted. Patrick v. Painesville Commercial Properties,Inc.(1997), 123 Ohio App.3d 575, 586.
 {¶ 61} In the instant case, although the facts comprising the hypothetical question had not been admitted prior to Eggleston's testimony, they were eventually introduced into evidence via Friedman's testimony; accordingly, no reversible error occurred. Further, in addition to his testimony based upon the hypothetical question, Eggleston also testified that he based his opinion upon his personal review of physical evidence, laboratory reports and witness statements during the course of his investigation of the blast. Eggleston also testified that he based his opinion, in part, on discussions he had with Friedman regarding the type of device used in the bombing. As such, Eggleston based his opinion on both personal observations and upon facts supplied by Friedman. " `Where a witness bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied.' " State v. Mack (1995), 73 Ohio St.3d 502, 512, quoting State v. Solomon (1991), 59 Ohio St.3d 124. Further, in Shivers, supra, this court held that an expert opinion based upon conversations with others was inadmissible when none of the pertinent statements made in those conversations were in evidence via testimony or deposition. Here, Eggleston's opinion satisfies this test because Friedman testified in detail about the nature of the explosive, thus putting the facts into evidence.
 {¶ 62} Moreover, even if Eggleston's testimony was admitted in error, we cannot find that such error amounted to plain error necessitating a reversal of defendant's convictions. Defendant has not demonstrated that the outcome of the trial clearly would have been different absent Eggleston's testimony. Friedman's testimony alone supports the convictions. Accordingly, defendant's fourth assignment of error is not well-taken.
 {¶ 63} On April 18, 2003, defendant filed a motion for a stay of proceedings to enlarge his time for filing a petition for post-conviction relief and for a second copy of the trial transcript to be provided at state expense. The state has opposed defendant's motion.
 {¶ 64} R.C. 2953.21(A)(1) provides that petitions for post-conviction relief are to be filed for consideration by the court that imposed sentence. There is no provision for an appellate court to consider motions to enlarge the time for filing a petition for post-conviction relief or for requesting an additional transcript until such motions have been adjudicated by the sentencing court's final appealable order. Accordingly, defendant's motion is hereby denied.
 {¶ 65} For the foregoing reasons, all four of defendant's assignments of error are overruled, defendant's Motion to Stay All Proceedings and/or an Order for Transcripts is denied, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Motion denied; judgment affirmed.
BROWN and McCORMAC, JJ., concur.
 McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Jacklyn and Forney were married as of the time of trial.
[2] Detective Kallay was involved in the investigation of the instant matter. He retired from the Columbus Police Department in January 2002.