[Cite as *State v. Lewis*, 2013-Ohio-4593.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99395**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARK A. LEWIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565013

**BEFORE:** Boyle, P.J., Keough, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 17, 2013

**ATTORNEY FOR APPELLANT**

Robert Botnick
The Botnick Law Firm, L.L.C.
11510 Buckeye Road
Cleveland, Ohio   44104


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Jennifer A. Driscoll
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Mark Lewis, appeals his sentence. Although he raises two assignments of error for our review, he raises the same argument in both, i.e., that "[t]he trial court abused its discretion in imposing a sentence that cannot be based, even in part, upon prior uncharged acts."[1] Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶2} In July 2012, Lewis was indicted on 26 counts: 13 counts of gross sexual imposition and 13 counts of kidnapping with sexual motivation specifications. The charges arose after the victim came forward and stated that Lewis had been having sexual contact with him from the time he was 12 years old until he was 17 years old.

{¶3} In November 2012, Lewis withdrew his former plea of not guilty and pleaded guilty to one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), four counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), and five counts of kidnapping in violation of R.C. 2905.01(A)(4), with the attendant sexual motivation specifications. The remaining counts were nolled by the trial court at the request of the state.

{¶4} At the sentencing hearing, Lewis's defense counsel requested the court sentence Lewis to community control sanctions because of his health and his age (58

---

[1]The quoted assigned error is Lewis's first assignment of error. His second assignment of error, although reworded, argues the exact same thing, namely, that even if the "trial court's consideration of prior uncharged acts was not the sole basis for the court's sentence, but may have been a partial basis," the case must be remanded for resentencing.

years old). Defense counsel explained that Lewis had a series of health issues, including heart issues, depression issues, dental issues, and issues with his right shoulder and his back. Defense counsel described Lewis's long history of being very active within his church, including being executive secretary under two bishops, being a teacher, a ward mission leader, and taking part in many other activities. Defense counsel further explained that Lewis was "tormented" by what he did, and that he accepted responsibility for his actions.

{¶5} Lewis apologized to the victim and the victim's family. He then thanked his family for their love and support. The trial court asked Lewis if he was aware that two alleged prior victims (who were brothers) had come forward, stating that Lewis had sexually molested them when they were children. Lewis knew about the two brothers who had come forward. The trial court then asked, "[h]ow do you respond to those allegations?" Lewis told the trial court, "[t]hat was years ago, and it was the same." The trial court asked Lewis to clarify what he meant by "it was the same." Lewis explained that he had "crossed the line" with the two alleged victims, just as he had with the current victim.

{¶6} After Lewis admitted that the allegations made by the two prior victims were true, the court asked Lewis why he claimed in the presentence investigation report in the present case that "much of [his] behavior was innocent?" Lewis explained that "there was a line in [his] mind, and that [he] never crossed that line." The trial court asked Lewis "in your own words, what is the wrong that you did?" Lewis replied,

"[i]nappropriate touching." The trial court asked, "[f]or sexual gratification?" Lewis replied, "[y]es." Lewis further admitted that it happened "often" ("when [he] was with [the victim]"), that the victim was a child when it happened, and that he used his "access to the family" to get to the victim.

{¶7} The state pointed out that in the presentence investigation report, Lewis blamed the victim for some of his actions. The state further described how Lewis used his church to gain trust and access to the victim's family, and then used that trust to get to the victim. The state requested the court sentence Lewis to the maximum of 50 years in prison.

{¶8} The court also heard from several people who spoke in support of the victim. First, over the objection of defense counsel, the court heard from the two prior victims. The first prior victim, M.S., stated that he was now 50 years old (noting that Lewis is eight years older than he is), but he said that approximately 40 years ago, Lewis "created two years of * * * pretty much hell in my life." M.S. stated that Lewis was his neighbor and a family friend. M.S. explained that Lewis "put a lot of fear and shame into me when I was younger." M.S. said that Lewis threatened that he would hurt M.S.'s family if he told anyone, so he kept it to himself. A few months ago, M.S. found out that Lewis "also molested [his] younger brother, which was crushing." M.S. never told anyone until he told his wife approximately ten years ago. M.S. said that he decided to come forward now for the victim in this case, calling him a "hero."

{¶9} M.S.'s brother, R.S., was also in court, but elected to have the state read his letter into the record. R.S. explained that Lewis molested him when he was between the ages of seven and ten years old. R.S. said that he thought that he would never tell anyone, but finally realized that Lewis "needs to be stopped."

{¶10} The court also heard extensive, heart-wrenching testimony from the victim's father, mother, sister (through a letter), and two younger brothers. After the victim came forward, the entire family was in turmoil. The victim's father blamed himself for not protecting his son. The victim's father explained how Lewis "did these acts in our home, while we were home." The victim's father and mother almost got divorced because of the stress of what the family was experiencing. The victim's father wanted to move to another state to "escape the evil that occurred in [their] home over a seven-year period." The victim's father began seeing a psychologist to "work through the trauma." The victim's father said that Lewis "used the church to build a relation of trust with us."

{¶11} The victim's mother said that her heart was broken "for all the years of hell that [her son] had to endure but silently [kept] himself together" and because her son had to stop his mission, "something that he had saved and wanted to do from the time he was a little boy." The victim's mother described her son as a hero, because he was "willing to sacrifice [himself] to prevent others from getting in harm's way."

{¶12} The victim also testified at length. He was 19 at the time of the sentencing hearing. The victim told the court of the emotional and physical harm that he endured

— and was still enduring — because of Lewis. The victim "describe[d] the past seven years of [his] life as hell." The victim came forward two days before he was scheduled to go on a two-year mission trip to Chile for his church. The victim had wanted to do this mission his whole life and had saved $10,000 of his own money to do so. But the victim said that he decided to come forward to protect his two younger brothers.

{¶13} The court noted that at the time of Lewis's arrest, police found "thousands of photographs of children in his possession." The court then stated that Lewis had been working with developmentally disabled individuals, "where some of them may have, in fact, been children, which is troubling because we do have the testimony here today, via letter and in person, from other individuals who alleged that they were victimized by this man over an extensive period of time."

{¶14} The court noted that there is "no other case that more persuasively indicates the amount of harm and pain and sorrow that the family has been through, indeed, that the entire community has been through." The court found Lewis's conduct to be more serious because of the physical and emotional harm that the victim suffered, as well as the fact that Lewis "held a position of trust" over the victim, and that Lewis's relationship with the victim and the victim's family facilitated this offense. The court indicated that although there had been "some minimal acceptance of responsibility" from Lewis, it did not believe Lewis had shown genuine remorse. The court also discussed Lewis's prior criminal conviction of lewd conduct from "some time ago" in another state.

**{¶15}** The court stated that it was imposing consecutive sentences and made the appropriate findings under R.C. 2929.14(C)(4) (which Lewis does not challenge). As part of those findings and as relevant to Lewis's arguments here, the court stated, "[t]he other finding I would like to make is that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender." The court concluded that, "[h]ere, we have, apparently, before the court, a person who's been abusing people for a very substantial period of time."

**{¶16}** The trial court merged the gross sexual imposition counts with the kidnapping counts, and the state elected to have Lewis sentenced on the kidnapping counts. The trial court sentenced Lewis to a total of 25 years in prison: five years for each count of kidnapping, to be served consecutive to each other. The trial court further notified Lewis that he would be labeled a Tier III sex offender and would be subject to a mandatory term of five years of postrelease control upon his release from prison. It is from this judgment that Lewis appeals.

Standard of Review

**{¶17}** An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Goins*, 8th Dist. Cuyahoga No. 98256, 2013-Ohio-263, ¶ 6, citing *State v. Johnson*, 8th Dist. Cuyahoga No. 97579, 2012-Ohio-2508, ¶ 6. Specifically, R.C. 2953.08(G)(2) provides that our review of a defendant's sentence is not for abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If

an appellate court clearly and convincingly finds either that (a) "the record does not support the sentencing court's findings under [R.C. 2929.13(B) or (D)], [R.C. 2929.14(B)(2)(e) or (C)(4)], or [R.C. 2929.20(I)], whichever, if any, is relevant" or (b) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

{¶18} In this case, only R.C. 2953.08(G)(2)(b) is applicable. Thus, if we clearly and convincingly find that the defendant's sentence is contrary to law, then we may modify Lewis's sentence or vacate it and remand for resentencing.

Trial Court's Consideration of
Uncharged Prior Acts at Sentencing

{¶19} In his two assignments of error, Lewis argues that because the trial court considered "uncharged acts" that he allegedly committed, it violated his due process rights under the Ohio and United States Constitutions. Specifically, Lewis maintains that the trial court erred when it permitted two alleged prior victims to speak at his sentencing hearing about events that had transpired approximately 40 years ago. He contends that the trial court's consideration of these alleged acts was contrary to law and an abuse of discretion. After review, we find Lewis's arguments to be unpersuasive.

{¶20} We note at the outset that Lewis's assertion that the trial court considered acts that he *allegedly* committed is simply wrong. Before the trial court permitted the two prior victims to testify at Lewis's sentencing hearing, Lewis *admitted* to the trial court that the allegations were true; that is, Lewis *admitted* to sexually abusing two boys,

who were seven- and ten-years old when the abuse began, for years. Although it was approximately 40 years ago, Lewis was an adult when he committed the acts.

{¶21} The parameters of a sentencing hearing are set forth in the Ohio Revised Code. R.C. 2929.19 provides that "[a]t the [sentencing] hearing, the offender, the prosecuting attorney, the victim or the victim's representative * * * *and*, *with the approval of the court*, *any other person* may present information relevant to the imposition of sentence in the case" and that the trial court shall consider such information along with the record, and any presentence report or victim impact statement, prior to imposing a sentence. (Emphasis added.) R.C. 2929.19(A) and (B). Further, when sentencing a defendant, a trial court may also consider any factors that are relevant to achieve the purposes and principles of sentencing and any factors that are relevant to determine the seriousness of the offender's conduct and whether the offender is likely to commit future crimes. *See* R.C. 2929.11 and 2929.12.

{¶22} As this court explained in *State v. Hinton*, 8th Dist. Cuyahoga No. 84582, 2005-Ohio-3427, ¶ 12:

> [T]he Rules of Evidence do not apply in sentencing hearings, and the judge may consider any reliable evidence in the record. Evid.R. 101(C); *State v. Cook*, 83 Ohio St.3d 404, 425, 700 N.E.2d 570 (1998). * * * "[I]t is well-established that a sentencing court may weigh such factors as arrests for other crimes. As noted by the Second Circuit United States Court of Appeals, the function of the sentencing court is to acquire a thorough grasp of the character and history of the defendant before it. The court's consideration ought to encompass negative as well as favorable data. Few things can be so relevant as other criminal activity of the defendant: 'To argue that the presumption of innocence is affronted by considering unproved criminal activity is as implausible as taking the double jeopardy clause to bar reference to past convictions.' *United States v. Doyle*, 348

F.2d 715, 721 (1965), certiorari denied 382 U.S. 843, 15 L.Ed.2d 84, 86 S.Ct. 89 (1965); *United States v. Metz*, 470 F.2d 1140 (3d Cir.1972), certiorari denied 411 U.S. 919, 36 L.Ed.2d 311, 93 S.Ct. 1558 (1973)." *State v. Burton*, 52 Ohio St.2d 21, 23, 368 N.E.2d 297 (1977); *see also Maple Heights v. Dickard*, 31 Ohio App.3d 68, 71, 508 N.E.2d 994 (1986).

**{¶23}** Thus, just as a trial court may consider prior *arrests* (i.e., not just prior convictions) for other crimes, it may also consider prior uncharged acts — especially when, as here, the defendant admitted that he committed the prior acts.

**{¶24}** Lewis's reliance on the cases that he cites is misplaced. In a number of the cases, *State v. Jeffers*, 57 Ohio App.2d 107, 385 N.E.2d 641 (1st Dist.1978), *State v. Patterson*, 110 Ohio App.3d 264, 673 N.E.2d 1001 (10th Dist.1996), and *State v. Russo*, 8th Dist. Cuyahoga No. 78096, 2001 Ohio App. LEXIS 2422 (May 31, 2001), the reviewing courts held that a trial court erred when it relied on evidence at sentencing that related to a charge of which a jury had acquitted the defendant. That is simply not the case here.

**{¶25}** Several other cases that Lewis relies on, including *State v. Longo*, 4 Ohio App.3d 136, 446 N.E.2d 1145 (8th Dist.1982); *Cleveland Hts. v. Seastead*, 8th Dist. Cuyahoga No. 68875, 1995 Ohio App. LEXIS 4513 (Oct. 12, 1995); *State v. Henley*, 8th Dist. Cuyahoga No. 74305, 1998 Ohio App. LEXIS 5080 (Oct. 29, 1998); *State v. Gipson*, 8th Dist. Cuyahoga No. 75369, 1999 Ohio App. LEXIS 2305 (May 20, 1999); and *State v. Smith*, 8th Dist. Cuyahoga No. 76919, 2000 Ohio App. LEXIS 3512 (Aug. 3, 2000), are also not applicable to the facts in this case. In each of these cases, the defendant pleaded guilty to one offense, but when sentencing the defendant, the trial court

considered the surrounding facts that led to all of the charges in the indictment, not just the facts that supported the offense to which the defendant pleaded guilty as part of the plea bargain.[2] But here, the trial court did not sentence Lewis for a more serious crime than that to which he had pleaded guilty.

**{¶26}** Even if these cases were applicable, however, a more recent decision by this court casts doubt on their holdings. *See State v. Frankos*, 8th Dist. Cuyahoga No. 78072, 2001 Ohio App. LEXIS 3712 (Aug. 23, 2001). In *Frankos*, this court held that "[n]otwithstanding the plea bargain the judge may sentence the offender within the statutory parameters of the plea-bargained offense based upon what the record shows to have been the real facts of the offense." *Id.* at ¶ 6, citing Griffin & Katz, *Ohio Felony Sentencing Law*, at 450-451 (2000 Ed.) (footnotes and citations omitted). We further explained that the "seriousness of the offense [at sentencing] will generally be based upon the judge's perception of the real facts of what occurred, and the plea-bargained offense will simply set a ceiling on what the judge can impose." *Id.* Thus, a trial court may consider all of the facts that are in the record when sentencing a defendant — even facts that support an offense that was dismissed as part of the plea bargain.

**{¶27}** At the sentencing hearing in this case, the trial court relied on what each party placed on the record, including the victim's testimony and the victim's family's

---

[2]Except in *Longo*, the judge went a little further than just relying on the surrounding facts that led to the indictment (i.e., the facts that were in the record). The trial court conducted its own investigation into what had occurred and relied on that information at sentencing. We found that the trial court's "own investigation of a crime neither charged nor proven" was egregious. *Id.* at 141.

testimony, as well as the presentence investigation report, the court's psychiatric report, the facts of the case, and Lewis's prior *criminal conduct*, including his prior acts against the two brothers nearly 40 years ago. This information was relevant and proper for the trial court to grasp the character and history of the defendant. *See Hinton*, 8th Dist. Cuyahoga No. 84582, 2005-Ohio-3427.

{¶28} In addition to considering Lewis's prior criminal conduct, the court also considered other proper sentencing factors. In sum, the trial court sentenced Lewis to 25 years in prison for sexually abusing the victim over a period of five years — abuse that occurred, according to the victim, over 100 times. Even Lewis told the trial court that the abuse happened "often." Further, Lewis took advantage of his relationship of trust with the victim's family to get to the victim. The trial court further considered the extensive emotional and physical harm the victim and his family had to endure — and are still enduring. Finally, the court noted that although Lewis expressed "some minimal acceptance of responsibility," it explained that it did not believe that Lewis had shown genuine remorse.

{¶29} Accordingly, Lewis's sentence is not contrary to law. His first and second assignments of error are overruled.

{¶30} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
TIM McCORMACK, J., CONCUR