[Cite as *State v. Adams*, 2023-Ohio-809.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111637 |
| v. | : | |
| DONALD J. ADAMS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-21-662542-A, CR-21-662548-A, CR-21-664646-A, CR-21-666081-A,
CR-21-666093-A, and CR-22-667709-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl M. Felice, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Donald J. Adams ("Adams") appeals his six-year prison sentence, which was imposed after he pled guilty to various theft offenses in six separate

criminal cases.  After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}    On March 29, 2022, Adams pled guilty to eight counts of fifth-degree felony theft in violation of R.C. 2913.02 in six cases.  On May 25, 2022, the court sentenced Adams to 12 months in prison for each theft.  The court ran six of the eight counts consecutively for an aggregate prison term of 72 months.  The court also ordered Adams to pay $33,850 in restitution.  It is from this sentence that Adams appeals, raising the following assignments of error for our review:

> I.      The trial court, by considering uncharged, unproven, and vague allegations of criminal conduct in sentencing Mr. Adams to maximum, consecutive sentences, deprived Mr. Adams of his liberty without due process and of his constitutional rights to a grand jury indictment, to trial by an impartial jury, to proof of the charges against him beyond a reasonable doubt, to confront the witnesses against him, and to otherwise present a defense.
>
> II.     Because the trial court's findings that consecutive sentences were appropriate are tainted by the trial court's consideration of uncharged, unproven, and vague allegations of criminal conduct in sentencing as a whole, the record does not support the trial court's consecutive sentencing findings.
>
> III.    Trial counsel for Mr. Adams failed to provide effective assistance of counsel, guaranteed by both the United States Constitution, and the Ohio Constitution, when he failed to object both to the recitation of the victim impact statement of K.W. and when he failed to object to the trial court's reliance upon that statement.

## II. Victim-Impact Statement

### A. Use of Victim-Impact Statement at Sentencing Hearing

{¶ 3} At Adams's sentencing hearing, the prosecutor read into the record a statement from one of the victims in the case at hand.

> [K.W.] would have said this, Judge: He felt like he was cheated and strung along. He wanted to tell you that there were many other people who were involved, many other victims but didn't come forward. He points to one of his neighbors up the street, and he also mentions two guys who were laborers that worked for Mr. Adams that were never paid their money for the work that they completed for him.

{¶ 4} The court read into the record the following portion of another victim-impact statement that was filed in this case. "I understand that the Court has to deal with more horrendous crimes where victims have paid the ultimate price. However, just because this is a non-violent crime, Mr. Adams should not be able to commit crimes like this and get away with it. The emotional and financial impact on my family and all the other victims will be felt for years to come." Several other victim-impact statements were made part of the record in the instant case, although they were not singled out at Adams's sentencing hearing.

{¶ 5} The court explained that it did not "typically sentence to prison on non-violent crimes." However, as to Adams, the court stated, "sometimes in order to contain a problem that we have in the community incarceration is the only option." The court stated that there were 13 victims in the six cases at issue, and Adams committed these offenses shortly after his release from prison. According to the court, "this is how you conduct your business, this is how you make a living * * *." The court noted that Adams had "underlying issues, * * * underlying traumas and

addictions," but that other "people with addictions and mental health issues * * * don't leave this many victims in their wake."

**{¶ 6}** The court concluded that it "considered the record, the oral statements made here today, the pre-sentence investigation report, the treatment plan provided by Recovery Resources, the victim-impact statements and the oral statements made [at] the plea negotiations. * * * I have to take into account how likely is it that Mr. Adams is going to be released and then pick up where he left off."

**{¶ 7}** The court then stated the following:

> There is one thing I want to add. This is to the victims. I think we all consider ourselves to be smart, intelligent people. When you get taken like this, there is a lot of shame that goes along with that. No one wants to be made a fool of. It's no fault of their own, but that shame is a human emotion. It comes with being ripped off.
>
> So when [K.W.] says that there were many other victims that didn't come forward, I can understand why. We're here today on 13, but I am not confident that they got everyone.

### B. Law and Analysis

**{¶ 8}** We first note that Adams did not object to the use of any victim-impact statements at his sentencing hearing. However, on appeal Adams focuses on the use of K.W.'s victim-impact statement. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." It is well-established law that a "failure to object waives all but plain error." *State v. Harris*, 8th Dist. Cuyahoga No. 110982, 2022-Ohio-4630, ¶ 35.

{¶ 9} To review for plain error, courts must engage in a three-part test. *State v. Barnes*, 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002).

> First, there must be an error, *i.e.*, a deviation from a legal rule. * * *
> Second, the error must be plain. To be "plain" within the meaning of
> Crim.R. 52(B), an error must be an "obvious" defect in the trial
> proceedings. * * * Third, the error must have affected "substantial
> rights." We have interpreted this aspect of the rule to mean that the
> trial court's error must have affected the outcome of the trial.

(Emphasis sic.) *Id*. at 27.

{¶ 10} Pursuant to R.C. 2930.14(A), "[b]efore imposing sentence upon * * * a defendant * * * for the commission of a criminal offense * * *, the court shall permit the victim and victim's representative, if applicable, to be heard orally, in writing, or both during the sentencing or disposition proceeding." *See also* R.C. 2929.19(A) (At a defendant's sentencing hearing, the victim "may present information relevant to the imposition of sentence in the case.").

{¶ 11} Pursuant to R.C. 2930.14(B), "[t]he court shall consider a statement made by a victim or victim's representative under division (A) of this section along with other factors that the court is required to consider in imposing sentence or in determining the order of disposition." *See also State v. Simonoski*, 8th Dist. Cuyahoga No. 98496, 2013-Ohio-1031, ¶ 17 (concluding that the court's consideration of a victim-impact statement "was appropriate in determining the sentence to be imposed. Pursuant to R.C. 2930.14, the victims can give oral or written statements at the hearing in which they detail the harm suffered and sanction that should be imposed.").

**{¶ 12}** R.C. 2930.14(B) further states that "[i]f the statement includes new material facts, the court shall not rely on the new material facts unless it continues the sentencing * * * or takes other appropriate action to allow the defendant * * * an adequate opportunity to respond to the new material facts."

**{¶ 13}** We first find that the court complied with R.C. 2930.14(A) by permitting the victims in the multiple cases at issue to make statements, including the statement by K.W. that was read into the record. Next, we find that the court complied with R.C. 2930.14(B) by considering these statements when imposing Adams's sentence. Finally, we conclude that the victim-impact statements at issue did not include new material facts that the court relied on as envisioned by R.C. 2930.14(B). While the statements referenced the possibility of other victims, the court made it clear at the sentencing hearing that Adams was being sentenced for the crimes in the six cases at issue, which encompassed 13 victims. *See State v. Lewis*, 8th Dist. Cuyahoga No. 99395, 2013-Ohio-4593, ¶ 23 ("[J]ust as a trial court may consider prior *arrests* (i.e., not just prior convictions) for other crimes, it may also consider prior uncharged acts" when sentencing a defendant.). (Emphasis sic.) *See also U.S. v. Doyle*, 348 F.2d 715, 721 (2d Cir.1965) ("The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it. Its synopsis should include the unfavorable, as well as the favorable, data, and few things could be so relevant as other criminal activity of the defendant, particularly activity closely related to the crime at hand. * * * To argue that the presumption of innocence is affronted by considering unproved criminal activity is

as implausible as taking the double jeopardy clause to bar reference to past convictions.").

{¶ 14} We find that the court did not err by allowing K.W.'s victim-impact statement to be read into the record at Adams's sentencing hearing. Furthermore, the court did not err by referencing this statement prior to imposing Adams's sentence. Accordingly, we find no violation of the myriad constitutional rights Adams sets forth in his first assignment of error. This assignment of error is overruled.

## III. Consecutive Sentencing

{¶ 15} "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Pursuant to R.C. 2929.14(C)(4), the court must find consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and at least one of the following three factors:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 16} Pursuant to the Ohio Supreme Court's recent holding in *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, ¶ 12, the trial court also "must consider the number of sentences that it will impose consecutively along with the defendant's aggregate sentence that will result." *Gwynne* additionally clarified the standard for an appellate court's review of consecutive sentences under R.C. 2953.08(G)(2): "[U]pon a de novo review of the record, an appellate court may reverse or modify a defendant's consecutive sentences — including the number of consecutive sentences imposed — when it clearly and convincingly finds that the record does not support the trial court's findings." *Gwynne* at ¶ 12. "In other words, the consecutive-sentence findings are not simply threshold findings that, once made, permit any amount of consecutive sentence stacking." *Id*. at ¶ 13.

{¶ 17} Upon review of the sentencing hearing transcript in the case-at-hand, we find that the trial court made the appropriate findings under R.C. 2929.14(C)(4) and incorporated these findings into its sentencing journal entry.

{¶ 18} When sentencing Adams, the court stated on the record that it took the following things into consideration: Adams's "history of theft [which] goes back * * * to 1992" and includes a "string of passing bad checks with the drug possessions, drug trafficking, more thefts, drugs and theft." The court noted that Adams has been sentenced to prison, jail, and probation. The court stated that it had to "consider protecting the public from future crime by" Adams.

{¶ 19} The court also considered the "overriding principles and purposes of felony sentencing, to protect the public from future crime by you and to punish you using the minimum sanctions that the Court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." The court further considered "the need for incapacitation, deterrence and rehabilitation" as well as "the seriousness and recidivism factors." Furthermore, the court found "that the sentence is not disproportionate to the seriousness of the conduct and the danger posed by [Adams], and that two or more offenses are part of one or more course of conduct and that the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct * * *."

{¶ 20} Additionally, the court considered the number of sentences it imposed consecutively as well as the resulting aggregate sentence. Adams pled guilty to 8 theft offenses, each one of which is subject to a maximum sentence of 12 months in prison. The court ran six of the eight 12-month sentences consecutively, for an aggregate sentence of 72 months. In other words, the court exercised its discretion by not imposing all eight sentences consecutively. Upon a de novo review, we clearly and convincingly find that the record supports the trial court's findings and the imposition of consecutive sentences under R.C. 2929.14(C)(4), as well as the six consecutive sentences actually imposed.

{¶ 21} Accordingly, Adams's second assignment of error is overruled.

## IV. Ineffective Assistance of Counsel

{¶ 22} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id*. at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 23} Adams argues that his trial counsel was ineffective for failing "to object both to the recitation of the victim-impact statement of K.W. and when he failed to object to the trial court's reliance upon that statement." The Ohio Supreme Court has held that the "failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1989).

{¶ 24} Adams has failed to show that his trial counsel was ineffective. Any objection would have been futile as the victim-impact statement in question was properly before the court at sentencing and there is no evidence that the court relied upon K.W.'s statement when sentencing Adams, although the court considered

K.W.'s statement. Moreover, the R.C. 2929.14(C)(4) factors overwhelmingly support the imposition of consecutive sentences in this case. Shortly after being released from prison, Adams went on a theft crime spree involving 13 victims, six cases, eight convictions, and $33,850 in restitution.

{¶ 25} Accordingly, Adams's third and final assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR